Ketchum Coal Co. v. Dist. Ct. of Carbon County et al., 48 Utah 342.

KETCHUM COAL CO. v. DISTRICT COURT OF CARBON
COUNTY et al.

No. 2964.   Decided August 22, 1916.   (159 Pac. 737.)

1.  MANDAMUS—RIGHT TO RELIEF.. Where mandamus is sought to
    compel action on the part of a court, the legal right to such
    particular action must be clear, and the legal duty to do the
    act or thing demanded on the part of the court must be equally
    clear.[1]   (Page 350.)

2.  MANDAMUS—RIGHT TO RELIEF—REMEDY BY APPEAL. Where man-
    damus is sought to compel action on the part of a court, there
    must be a lack of an adequate remedy by appeal.   (Page 350.)

3.  MANDAMUS—RIGHT TO RELIEF—ENTERTAINING AND PROCEEDING
    WITH CAUSE.  Mandamus may issue to compel a court to take
    jurisdiction of a cause and to proceed to hear and determine
    it, where the court without legal authority therefor refuses
    jurisdiction.[2]   (Page 350.)

4.  MANDAMUS—RIGHT TO RELIEF—ENTRY OF JUDGMENT. Where a
    court has heard a case and has made its findings, mandamus
    will lie to compel it to enter final judgment.[3]   (Page 350.)

5.  MANDAMUS—RIGHT TO RELIEF—ENFORCEMENT OF JUDGMENT.
    Mandamus will lie to compel courts to enforce their own judg-
    ments.[4]   (Page 350.)

6.  MANDAMUS—RIGHT TO RELIEF—HEARING AND DETERMINING CASE.
    Mandamus will issue to compel a court to proceed when through
    mere mistake of law it declines to take jurisdiction and for
    that reason refuses to proceed to try a case or to hear and deter-
    mine the issues therein, and where there is no adequate rem-
    edy by appeal.   (Page 350.)

7.  EMINENT ROMAIN—ORDER OF CONDEMNATION—EFFECT.   That
    plaintiff in a proceeding to condemn a strip of land had the
    legal right to condemn and that condemnation was for a public

[1]*Hoffman* v. *Lewis*, 31 Utah 179, 87 Pac. 167; *Carbon County* v.
*School District*, 45 Utah 147, 143 Pac. 220; *State* v. *Morehouse*, 38
Utah 234, 112 Pac. 169; *Kyrimes* v. *Kyrimes*, 45 Utah 168, 143 Pac.
232.

[2]*Hoffman* v. *Lewis*, 31 Utah 179, 87 Pac. 167.

[3]*Benson* v. *Ritchie*, 44 Utah 59, 138 Pac. 136.

[4]*Ketchum Coal Co.* v. *A. H. Christensen, Judge, et al.*, 48 Utah 214,
159 Pac. 541.

use was settled by the lower court's order of condemnation authorizing plaintiff to take possession of and improve the strip. (Page .351.)

8. EMINENT DOMAIN—DETERMINATION OF TITLE—LEGAL OR EQUITABLE REMEDIES. Under Const. Art. 8, Section 19, providing that there shall be but one form of civil action, and that law and equity may be administered in the same action, and Comp. Laws 1907, Section 3596, providing that the court shall have power to determine all adverse and conflicting claims to the property sought to be condemned, and to the damages therefor, and to determine the respecitve rights of different parties seeking condemnation of the same property, in a condemnation action where it was alleged that a defendant company claimed to own part of the property sought to be condemned, and such company in its answer claimed title to such land, and the plaintiff in its reply alleged that since the commencement of the action it had acquired title to the land in question, and denied the defendant company's title, the District Court, without requiring the issue of title or the damages to other lands resulting from the severance to be determined in a separate action, was authorized to determine those issues in the same action.[1] (Page 351.)

9. JURY—JURY TRIAL—DEPRIVATION—EMINENT DOMAIN. Such action would not necessarily deprive a party of a jury trial, since, if the question respecting title was equitable, no party would be as a matter of right entitled to a jury trial, and, if the question was purely legal, then all questions whether with regard to the title or the damages might be submitted at the same time to the jury impaneled in the case, and the court might by proper instruction tell the jury that the damages must be apportioned in accordance with their findings respecting the title. (Page 356.)

10. EMINENT DOMAIN—CONDEMNATION PROCEEDING—NATURE. Condemnation proceedings were created so that the title or ownership of real property which is claimed and needed for some public use may be transferred from one person to another against the will of the owner. (Page 356.)

11. EMINENT DOMAIN—PLEADING AND ISSUES—TITLE OF PLAINTIFF. In an action by a coal company against another coal company to condemn a strip of ground for a tramway, wherein the complaint alleged that the defendant claimed to own part of the strip of land sought to be condemned, and the answer

---

[1]*Morgan* v. *Child, Cole Co.*, 41 Utah 562, 128 Pac. 521; *Park* v. *Wilkinson*, 21 Utah 285, 60 Pac. 945.

Ketchum Coal Co. v. Dist. Ct. of Carbon County et al., 48 Utah 342.

claimed title to the land and damages for lands affected, etc., and plaintiff's reply alleged that since the commencement of the action it had acquired title to the land in question and set forth the source of its title and denied the defendant's title, defendant was not entitled on the pleadings and issues to a dismissal of the action on the ground that plaintiff was asserting paramount title in itself, and that there was nothing to condemn.  (Page 356.)

12.  EMINENT DOMAIN—PROCEEDINGS—ALLEGATION AND PROOF OF TITLE. In a condemnation action, the plaintiff may acquire the title subsequent to the institution thereof, and, if he does, may plead such fact.  (Page 358.)

13.  ESTOPPEL—EMINENT DOMAIN—PROCEEDINGS—DISPUTING TITLE OF DEFENDANT. Ordinarily, where a condemnor commences his proceeding and does not assert title in the land sought to be condemned, he may not, except under certain conditions, dispute the title of condemnee; and the condemnor cannot dispute the title of the party in possession against whom proceedings have been instituted, unless such party has acquired a paramount title.  (Page 358.)

14.  MANDAMUS—JUDICIAL ACTS—DISMISSAL OF ACTION—REMEDY BY APPEAL. Ordinarily, the court acts judicially in dismissing an action or complaint, and its error therein may be reviewed on appeal if the action has passed to final judgment.  (Page 359.)

15.  MANDAMUS—JUDICIAL ACTS—HEARING CAUSE. Where the District Court in a condemnation action, having jurisdiction to determine both the issue of title and of damages, dismissed the action on the ground that the issue of title should be determined in another action, the dismissal amounted to a refusal to hear and determine issued presented in the action, and mandamus would lie to compel the court to proceed to trial and determine the case upon the issues, and to enter final judgment thereon.[1]  (Page 359.)

16  APPEAL AND ERROR—DECISIONS APPEALABLE—FINAL JUDGMENT. A cause cannot be appealed until final judgment is entered therein between all the parties.  (Page 360.)

17  MANDAMUS—RIGHT TO RELIEF—ADEQUATE REMEDY BY APPEAL. In a coal company's action to condemn a strip of land for a tramway, etc., brought against another coal company and other defendants, where the court, though having jurisdiction to de-

---

[1]*Hoffman* v. *Lewis*, 31 Utah 179, 87 Pac. 167; *Benson* v. *Ritchie*, 44 Utah 59, 138 Pac. 136.

Original application for peremptory writ of mandate.

termine both the issues of title and damages erroneously dismissed the action as against defendant coal company on the ground that the issue of title should be determined in separate action, plaintiff had no adequate remedy by appeal, as notwithstanding the order of condemnation and its possession, it would be required to await final judgment as to the other defendants before it could appeal, and to submit to have its action tried in parts, and might be required to pay costs and expenses incident to two jury trials, so that the only adequate remedy would be a writ of mandate directing the District Court to reinstate the case as against the defendant company, to determine the issues, and to enter judgment thereon. (Page 360.)

18. DISCOVERY—POWER OF COURT—STATUTE. Under the statute the district court in a condemnation proceeding has ample power to make an order on plaintiff's motion requiring all the corporation defendants to permit plaintiff to obtain a full discovery and development of all relevant and material facts, under the supervision and control of the court. (Page 361.)

19. DISCOVERY—NATURE—SCOPE. In a condemnation proceeding, plaintiff's motion for an order requiring all the corporation defendants to permit it to inspect and take copies of all of their contracts, resolutions, mortgages, books, documents, papers, memoranda, correspondence, bonds, etc., in the possession or under the control of any of the defendants was too sweeping and indefinite. (Page 361.)

20. MANDAMUS—JUDICIAL ACTS—DENIAL OF MOTION FOR DISCOVERY—REMEDY BY APPEAL. Plaintiff in a condemnation action aggrieved by error in granting or refusing its motion for the inspection of the defendants' contracts, correspondence, etc., may preserve an exception to the ruling and present it to the Supreme Court on appeal after final judgment, and hence mandamus will not issue to compel the district court to vacate its order denying the motion on the ground that it had no power to grant it, and to require it to consider the motion upon its merits and to pass upon it. (Page 361.)

(See 48 Utah 214, 159 Pac. 541.)

Original application by the Ketchum Coal Company for a peremptory writ of mandate to require Hon. A. H. Christensen, Judge of the District Court of Carbon County, Utah, to vacate an order or judgment dismissing the defendant Pleasant Valley Coal Company from a condemnation action brought by plaintiff against it and other defendants, and to reinstate

it as a defendant in such action, and to proceed to try it against all of the defendants.

Peremptory writ of mandate issued requiring the district court to vacate its order for judgment, reinstate the company as a party defendant, and to proceed to try and determine all the issues with regard to title presented by the pleadings of the respective parties, whether legal or equitable and to make such final disposition upon the merits of such issues and to enter such judgment as to it may seem just and proper.

   *Boyd, DeVine & Eccles* and *Walton & Walton* for plaintiff.

   *Dickson, Ellis, Ellis & Schulder* and *Van Cott, Allison & Riter* for defendants.

   FRICK, J.

This is an original application to this court for a peremptory writ of mandate to require Hon. A. H. Christensen, Judge of the District Court of Carbon County, Utah, to vacate an order or judgment dismissing the defendant Pleasant Valley Coal Company, hereinafter called company, as defendant from a certain action pending in said court wherein the plaintiff in this proceeding is plaintiff, and all of the other defendants above named, including said company, are defendants, and reinstate said company as a defendant in said action, and to proceed to try the same against all of the defendants, including said company. The application was made upon notice duly served upon all of the defendants. All except the Utah Fuel Company have appeared by their respective counsel and have joined in a demurrer to the application, and have also filed an answer to certain portions thereof. For the purposes of this decision it is not necessary to consider anything except the general demurrer which has been argued by respective counsel and the cause duly submitted. Neither is it necessary to make any further reference to the defendant Utah Fuel Company, nor to the answer of the defendants since it presents no issues which affect the result reached by us.

The application is based upon substantially the following facts: Some time in the year 1913, the plaintiff, under the

name of Ketchum Coal Company, a corporation, owning a coal mine in Carbon County, Utah, and the applicant in this proceeding, hereinafter styled plaintiff, commenced an action in the District Court of Carbon County against the defendants above named and other defendants to condemn a certain strip of ground to be used for tramway, tunnel, and other purposes in connection with the operation of its coal mine. In July, 1913, an order condemning a certain strip of ground was duly entered by said district court and the plaintiff was given, and took, possession of the strip condemned as aforesaid. During the first half of this year, however, some of the defendants interfered with plaintiff in its right of possession of said strip, and upon applying to the District Court of Carbon County for relief from said interference said court refused to grant the relief demanded and dismissed plaintiff's application. The plaintiff thereupon made an application to this court to require the district court to enforce its order of possession and use of such strip, which application was duly granted. *Ketchum Coal Company* v. *A. H. Christensen, Judge et al.*, — Utah —, 159 Pac. 541. In plaintiff's complaint filed in the condemnation proceeding it was alleged that the defendants claimed to own the property sought to be condemned, and it was further alleged that the company claimed to be the owner of certain portions of section 1, township 13 south, range 9 west, particularly describing the subdivisions affected and over a large portion of which lands the strip in question, which is 60 feet wide and 1,300 feet in length, extended. The company answered plaintiff's complaint and in its answer set up various defenses to plaintiff's right to condemn the property, and in connection therewith also claimed title to the strip of ground and to the land over which said strip extended. It also claimed a large amount of damages, both for lands affected and otherwise. It is not necessary to refer to the answers of the other defendants. The plaintiff in due time filed its reply to the company's answer. In the reply the plaintiff sought to meet the defense set up by the company and also explained and denied its claim for damages. The plaintiff also alleged in the reply that since the commencement of the action it had acquired title to the strip of ground

in question, setting forth in great detail the source of title, and denied the company's title; and in that connection it also set forth with much particularity the facts assailing the company's title and the reasons why the company did not have title to the strip of ground in question and to the other lands for which it claimed damages. No attack was made upon the reply, and the company proceeded to take the deposition of a certain witness for the purpose of controverting at least some of the facts pleaded in the reply. The case, it seems, was set for trial, but before that time arrived the company filed a motion in which it asked the court to dismiss the condemnation proceedings as against it for the reasons: (1) That the plaintiff was seeking to condemn property to which it had ''set up paramount title in itself by virtue of a conveyance'' from one who claimed title in fee, and that it claimed that it had acquired all rights to said property by virtue of said conveyance; and (2) for the reason that plaintiff was merely maintaining the action as against the company ''for the purpose of attempting to quiet its title to the property sought to be condemned, alleging and claiming that it has paramount title to said property sought to be condemned, and that the defendant Pleasant Valley Coal Company has no title therein or thereto.'' The district court granted the motion and dismissed the action as against the company, except as to a very small area of ground which was a part of said strip. The dismissal thus excluded from the condemnation proceedings practically the whole strip of ground which had been condemned and of which plaintiff had taken possession pursuant to the order of July, 1913, and upon which it alleges in this application it had expended about $40,000 in carrying out the purposes for which it had sought to condemn the same. By excluding the company and the strip of ground from the condemnation proceedings a large portion of the area of ground involved in that action has been eliminated therefrom.

The parties do not agree upon what ground the district court granted the company's motion. The plaintiff has, however, made the court's oral opinion a part of the record in this case. The company disputes that what plaintiff has presented

to us correctly reflects what the district court said in passing on the motion, and contends that it does not contain all that was said. We need not concern ourselves with all that the court may have said. Its reasons for dismissing the action against the company are not controlling. The controlling question is whether the dismissal can be sustained in law.

As already pointed out the motion to dismiss was based upon two and two grounds only. All that the court said, as appears from the stenographer's report, is directed to those grounds. From what the court said we are well satisfied that in passing on the motion it based its decision entirely upon the fact that the plaintiff in its reply had set forth that since the action was commenced it had acquired the title to the lands which the company claimed to own, and therefore, as the court said, the ''controversy between plaintiff and defendant (company) * * * is purely and simply a question of quieting the title.'' The court then goes on to enlarge upon its reasons for dismissing the action, and finally concludes that the question concerning the title ''should be determined outside of the condemnation suit, and the court so holds.'' In other portions of the court's oral opinion the same grounds are stated. There cannot be any doubt that the court granted the motion upon the sole ground that the plaintiff had set up in its reply that it had acquired the title to the strip of ground to which the company also claimed title, and that therefore the title to the lands in question was involved. The court then held that all questions affecting title should be determined in another action, and for that reason declined to proceed further in that action except as to those lands to which the plaintiff did not claim title; and as to all lands to which both it and the company claim title the proceeding was dismissed.

The company resists this application upon substantially the following grounds: (1) That mandamus is not the proper remedy; and (2) that the court properly dismissed the action as against the company for the reason that the plaintiff claims title to the strip of ground in question, and therefore the action as between it and the company could proceed only as one to quiet the title to the lands claimed by both, and that

a condemnation proceeding may not be converted into an action to quiet title.

Many reasons are urged by counsel why mandamus is not the proper remedy, the principle ones being: (1) That the court acted judicially in dismissing the action **1-6** against the company; and (2) because plaintiff has an adequate remedy by appeal. We have frequently stated the rule governing mandamus proceedings and under what circumstances the writ will be granted or denied. The rule and the reasons therefor are discussed in *Hoffman* v. *Lewis*, 31 Utah 179, 87 Pac. 167, *Carbon County* v. *School District*, 45 Utah 147, 143 Pac. 220, *State* v. *Morehouse*, 38 Utah 234, 112 Pac. 169, and *Kyrimes* v. *Kyrimes*, 45 Utah 168, 143 Pac. 232. We shall not pause to again discuss the rules or the reasons which ordinarily govern the courts in such proceedings except to state that where the writ is sought to compel action on the part of the court the legal right to the particular acion which is sought to be compelled by the writ must be clear and the legal duty to do the act or thing demanded on the part of the court must be equally clear. In addition to the foregoing there must be a lack of adequate remedy by appeal. Mandamus may, however, issue to compel a court to take jurisdiction of a cause and proceed to hear and determine it where the court, without legal authority therefor, refuses jurisdiction. *Hoffman* v. *Lewis, supra*. So, where a court has heard a case and has made its findings, mandamus will lie to compel it to enter final judgment. *Benson* v. *Ritchie*, 44 Utah 59, 138 Pac. 136. And, as we have recently decided, the writ will also lie to compel courts to enforce their own judgments. *Ketchum Coal Co.* v. *A. H. Christensen, Judge et al., supra*. The writ will likewise issue to compel a court to proceed when it, through mere mistake of law, declines to take jurisdiction, and for that reason refuses to proceed to try the case or refuses to hear and determine the issues therein and there is not an adequate remedy by appeal. The doctrine just attempted to be stated is laid down in 26 Cyc. 190, in the following words:

"Where a court declines jurisdiction by mistake of law, erroneously deciding as a matter of law and not as a decision upon the

facts that it has no jurisdiction, and either declines to proceed or disposes of the case, the general rule is that a mandamus to proceed will lie from any higher court having supervisory jurisdiction, unless there is a specific and adequate remedy by appeal or writ of error. Mandamus will not, however, issue to review the decision of a lower court which has refused jurisdiction after determination of fact."

From an examination of the cases, and by keeping in mind the underlying principles which govern courts in granting or denying the writ of mandate, it goes without saying that unless great care is exercised the writ in some instances may be improperly granted, while in others it may as improperly be denied. That can occur only, however, when the higher court, without reflection or without a careful examination of the authorities or close scrutiny of the facts, fails to fully grasp and appreciate the character or nature of the act or thing which is sought to be coerced, and the circumstances under which the court's refusal to act occurs. Some attention must also be given to the difference in the procedure or practice in the jurisdiction where the writ is applied for as compared with other jurisdictions from which cases are cited.

With the foregoing conditions in mind let us now proceed to a brief review of the case in hand. As we have seen, the original action was instituted to condemn a certain strip of ground. That the plaintiff had the legal right **7** to condemn, and that condemnation was for a public use, were settled by the lower court when it entered the order of condemnation and by which it authorized the plaintiff to take possession of and improve the strip of ground to which now both the plaintiff and the company claim title.

No legal objection seems to have been made to that order, and no objections were urged to plaintiff's complaint, and none was made to the company's answer in which it affirmatively set up its title to the strip. The plaintiff had, however, made one C. N. Sweet and one T. A. Ketchum **8** parties to the original complaint, and had therein alleged that they also claimed title to much of the land which the company claimed. While the action was pending, however, it seems that T. A. Ketchum obtained Sweet's title, or

supposed title, to the lands claimed by the company and that plaintiff thereupon acquired whatever title T. A. Ketchum had from him. The facts regarding the acquisition of the title were thus set forth in plaintiff's reply, and in that way, and for that reason the issue respecting the title to the strip in question and the particular subdivisions from which the strip is taken arose between the plaintiff and the company. While no objection was interposed to the reply as a pleading, yet, after the cause had been set for trial, the company interposed a motion to dismiss as against it for the reasons we have before stated. Are the reasons urged by the company in support of the court's action sound?

Counsel for the company have referred us to cases from other jurisdictions where it is held that when the title to the ground sought to be condemned is claimed by both the condemnor and the condemnee the question of title as between them may not be litigated or determined in a condemnation proceeding, but that the question of title must be settled in an independent action and that the condemnation proceeding cannot proceed until the question of title is settled. The cases of *City of Geneva* v. *Henson,* 195 N. Y. 447, 88 N. E. 1104, and *In re City of Yonkers,* 117 N. Y. 564, 23 N. E. 661, clearly reflect the holdings of the courts upon that subject, and hence it is not necessary to refer to other cases. Conceding, however, that the cases from New York, and from other states, that are referred to by counsel, in view of the statutory provisions and the nature of condemnation proceedings in those jurisdictions, are entirely sound, the question here is whether, in view of our constitutional and statutory provisions relating to the nature and character of actions in this jurisdiction, we are justified in following those decisions.

In New York, as well as in many other jurisdictions, condemnation proceedings are special and the proceeding comes before courts of general jurisdiction only in cases when there is an appeal from the damages awarded to the landowner. In the first instance, therefore, the proceedings are not instituted in courts of general jurisdiction and the amount allowed either for land taken or for damages to adjoining lands is not determined by a jury in the ordinary way as it would be

in a court, but it is usually determined by special commissioners or by a special tribunal. Under such circumstances every lawyer readily understands and appreciates why condemnation proceedings are not deemed proper to try questions of title, and therefore such questions must be tried in a court of general jurisdiction, and in case the dispute respecting the title arises between the condemnor and the condemnee the question of title must be determined in a proper action and in a proper court before the damages can be adjusted as between them. Such is, however, not the case in this jurisdiction. Our Constitution (article 8, section 19) provides:

"There shall be but one form of civil action, and law and equity may be administered in the same action."

Matters purely legal and purely equitable may thus not only be determined in the same forum, but they may be tried and determined in the same proceeding or action. Moreover, there is but one form of civil action known to our practice. In passing upon the foregoing provision of our Constitution this court, in *Morgan* v. *Child, Cole Co.*, 41 Utah 562, 128 Pac. 521, held that when it is necessary to settle equitable issues before legal rights are to be determined and adjusted, a separate action to determine the equitable questions is not necessary, and that a party to any action or proceeding cannot be required to adjudicate his equitable rights in a separate action, but he may have all issues, whether equitable or legal, heard and determined in the same action or proceeding. This court in that case, therefore, reversed the lower court's ruling by which it refused to proceed to determine the legal rights of the plaintiff until he had settled his equitable rights in a proper action in a court of equity.

This court has also held that when in a case both equitable and legal issues arise and it becomes necessary to determine the equitable issues before proceeding to an adjustment of the legal rights of the parties, or some of them, in such event the court must determine the equitable issues first. *Park* v. *Wilkinson*, 21 Utah 285, 60 Pac. 945, and cases there cited.

In view of the constitutional provision aforesaid, and the foregoing decisions, the District Court of Carbon County was clearly mistaken respecting its duty to hear and determine

all the issues arising in the original action, whether legal or equitable, and in holding that the issues respecting the title to the strip in question and with regard to the other land which is claimed to be damaged by the severance of the strip therefrom or by the construction of the contemplated improvements could not be tried and determined in the original action.

In some jurisdictions it is held that the title may be quieted in condemnation proceedings both as between the condemnor and the condemnee and as between several condemnees. It is, however, also held that in case the dispute respecting the title arises only between or among the condemnees so that it is only a question of the distribution of the condemnation money or the damages that are awarded, the question of title may be determined as well after as before the condemnation action is tried. Among other cases in which it is held that disputes regarding the title to the condemned property may be determined in the condemnation proceeding we refer to the following: *Chicago & M. El. Ry. Co.* v. *Diver*, 213 Ill. 26, 72 N. E. 758; *Illinois Cent. R. Co.* v. *Roskemmer*, 264 Ill. 103, 105 N. E. 695; *Chicago & N. W. Ry. Co.* v. *Miller*, 251 Ill. 58, 95 N. E. 1027; *Wilcox* v. *St. P. & N. P. Ry. Co.*, 35 Minn. 439, 29 N. W. 148; *Gerrard* v. *Omaha, N. & B. H. R. Co.*, 14 Neb. 270, 15 N. W. 231; *Dietrichs* v. *Lincoln & N. W. R. Co.*, 14 Neb. 355, 15 N. W. 728; *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, 57 Pac. 585.

In *Chicago & M. El. R. Co.* v. *Diver, supra*, the Supreme Court of Illinois quarely holds that the issue of title should be determined in the condemnation action, and with regard to the method of procedure the court states the rule thus:

"In a condemnation proceeding, the issue of ownership, if any, is preliminary to the submission of the question of damages to the jury, and is to be litigated and determined before the jury is impaneled to assess the amount to be paid the owner."

That case is approved and followed in *Illinois Cent. R. Co.* v. *Roskemmer, supra*. It is, however, said in the latter case that:

"It may be impossible to have a final adjudication before the trial as to the various titles involved."

*Chicago & N. W. Ry. Co.* v. *Miller, supra,* is a case in point. That condition may arise when the dispute regarding the title arises only between or among the condemnees. Where such is the case the condemnor takes the property and improves it, and the damages are assessed against him, which he pays into court to await the final determination of the title.

Where, however, as in this case, the dispute regarding the title arises between the condemnor and one or more of the condemnees the question of title must be settled and determined before the damages are assessed. In the case cited from Minnesota, as well as in those cited from Nebraska, it is held that disputes concerning the title may be determined in a condemnation proceeding, and it is so held notwithstanding the fact that under both the Minnesota and Nebraska statutes condemnation proceedings are not instituted in courts of general jurisdiction, but come there only on appeal in case either party is dissatisfied with the award of damages made by the commissioners appointed for that purpose. As a matter of course it is held in both states that the issues respecting title must be raised by the pleadings or they cannot be considered.

In *City of Los Angeles* v. *Pomeroy, supra,* Mr. Chief Justice Beatty, under a statute like ours, in his usual clear and vigorous style, points out that all questions relating to the title of the property that is condemned or is affected by the condemnation proceedings that may arise should be tried and determined in the condemnation action. And why may that not be done? It seems clear that our statute, which is like the one in California, contemplates that it should be done. Comp. Laws 1907, Sec. 3596, so far as material here, provides:

"The court or judge thereof shall have power:   *   *   * To hear and determine all adverse or conflicting claims to the property sought to be condemned, and to the damages therefor," and "to determine the respective rights of different parties seeking condemnation of the same property."

Again, under our statute an action to condemn lands is commenced, conducted, and tried in the same courts and in the same manner as all other actions affecting real property are tried. In view of the provisions of our statute it is not easy to understand why all issues arising in condemnation

actions are not to be tried and determined in that action the same as is done in all other actions affecting real property.

Counsel for the company, however, suggests that if that be done a party may be deprived of a jury trial. That does not necessarily follow. If the question respecting title is equitable no party is, as a matter of right, entitled to a jury trial, and if the question is purely legal then all questions, whether with regard to the title or the damages, may be tried and submitted at the same time to the jury that is impaneled in the case, and the court may, by proper instructions, tell the jury that the damages must be apportioned in accordance with their findings respecting the title. The same questions may arise in much the same way where a party sues for damages to his real property and his title is disputed.

Counsel for the company, however, also vigorously contend that where, as here, a plaintiff in a condemnation proceeding asserts paramount title in himself there is nothing to condemn, and therefore his action must fail. They insist that the plaintiff in its reply claims title to practically all the land that is claimed by the company, and in view of that fact there is nothing to condemn as against it. It is quite true that condemnation proceedings were conceived and created so that the title or ownership of real property which is claimed and needed for some public use or purpose may be transferred from one person, natural or artificial, to another against the will of the owner. As a general rule, therefore, the condemnor seeks to acquire the property of another. The cases therefore are not numerous where the owner seeks to condemn property in which he has an interest, and are much rarer still where he claims the title to the property sought to be condemned. Such cases may, however, arise. For example: There may be a title emanating from two sources. The condemnor may thus claim through one source while the condemnee may claim through the other. Again, the condemnor may claim the legal title in fee while the condemnee claims an equitable title; or the one may claim that he has acquired a tax title from the State the validity of

which the other having the fee title disputes. Now it is palpable that in any one of the foregoing instances the conditions may be such that the condemnor may desire possession of the property sought to be condemned at once for the purpose of devoting it to some public use. He may thus commence an action to condemn, set forth his title, and further allege that the condemnee claims ownership thereof, or some interest therein, pleading the facts in that regard. True it is, if the condemnor claims ownership the condemnee may, either by general demurrer or otherwise, admit his claim, and where that is the case the condemnor is entitled to judgment upon the merits, and the condemnee is entitled to go hence with his costs. That, however, is not the question we are confronted with. Here the company as condemnee concedes nothing and yet claims a strategic advantage over plaintiff by reason of its plea of ownership in its reply. The company, however, still insists on its plea of ownership in its answer as well as upon its denial of plaintiff's ownership in the same answer, and notwithstanding the fact that it concedes nothing and claims title in itself and disputes the title of plaintiff it nevertheless insists that there is nothing to condemn and nothing to try. To so hold would result in sacrificing substance to mere empty form. As a matter of course one may not invoke the aid of a court of justice to obtain that which is already his own and to which others lay no claim. We, however, have no such case to deal with here. Here both the plaintiff and the company claim title to the property sought to be condemned. The company was in possession of the strip condemned until the order of condemnation was entered, when plaintiff took possession thereof, and has since then placed certain improvements thereon. If the company desires to concede plaintiff's claim of title all it has to do is to withdraw its answer and surrender its claim of title. The plaintiff may then have judgment on the merits against it, and the case should of course be dismissed, at least as against the company. So long, however, as it claims the title to the condemned strip and demands damages therefor, how can it demand to be dismissed from the case? It would seem that the mere statement of the proposition is its best answer.

It should, however, also be remembered that in this court the plaintiff alleges that it acquired the title subsequent to the institution of the condemnation action. Why may a con-demnor not do that? And if he does, why may he not plead the fact? Indeed, if he did not plead it he could not avail himself of it in the action. The same pre-sumptions should therefore not prevail where one pleads that since the commencement of the action he has acquired an outstanding title as though he had claimed the paramount title in. his original complaint, and especially not where, as here, the condemnee persists not only in denying the plain-tiff's title, but continues to claim the title in itself.

Ordinarily, where a condemnor commences his proceeding and does not assert title or ownership in the land sought to be condemned he may not, except under certain condi-tions, dispute the title or ownership of the condemnee. Mr. Mills, in his work on Eminent Domain (2d Ed.) Section 161, states the rule in that regard thus:

"The condemning party cannot dispute the title of the party in possession, against whom proceedings have been instituted, unless such party has acquired a paramount title."

Counsel for the company contend that the last clause is not supported by authority and hence cannot be considered. But why not? It certainly is good sense and we think must com-mend itself to every disinterested lawyer. Moreover, to per-mit the dismissal to stand would place the plaintiff in a most anomalous if not deplorable condition. In that event what becomes of the order of condemnation? What are plaintiff's rights in and to the strip of which it took possession under that order and in the improvements placed thereon pursuant thereto? Is or is not the plaintiff a trespasser? And, if so, is it such from the time it took possession under the court's order or only from the date of the dismissal of the action as against the company? We confess our entire inability to grasp plaintiff's legal status in case the dismissal stands.

Counsel for the company, however, insist: (1) That al-though it were conceded that the court was mistaken regard-ing the law and may have misconceived its duty in the prem-

ises in dismissing the company from the action, yet that
it acted judicially; (2) that the plaintiff has an ade-
quate remedy by appeal and hence mandamus will not
lie.  Ordinarily, no doubt, the court acts judicially in dismiss-
ing an action or complaint and in case it errs such error may
be reviewed on appeal after the action has passed to final
judgment.   Does the court's action in this case, however,
merely constitute an erroneous dismissal?   True, generally
speaking, it may be said the court erred in dismissing the ac-
tion.   The error, however, falls within the principle we have
quoted from Cyc. and the one discussed in the case of *Hoff-
man* v. *Lewis, supra.*   In fact and in law the dismissal in this
case clearly amounts to a refusal on the part of the lower
court to hear and determine the issues that are presented in
the condemnation action.   If any court in any case should
arbitrarily or capriciously refuse to hear and determine such
case and should dismiss it, would any one question the ag-
grieved party's right to a writ of mandate to compel such
court to proceed to try and determine the case on its merits
and to enter final judgment thereon?   Of course, as was stated
in *Benson* v. *Ritchie, supra,* the Supreme Court could not di-
rect what the judgment should be, nor would such tribunal
say that the action should not finally be dismissed upon its
merits. It would, however, be proper to compel the court to
hear the case and to enter a final judgment therein.   If, there-
fore, it is proper to do that, why is it not also proper to com-
pel the court to hear the case upon its merits and to enter a
final judgment therein either by dismissing it upon the
merits or by granting such relief as to the court under all
the facts and circumstances, may seem just and right?

Now let it be conceded, for no doubt such is the fact, that
the lower court did not intend to act either arbitrarily or
capriciously in refusing to hear and determine the issues re-
specting the title to the lands in question and in dismissing the
action as against the company, yet how does that affect either
plaintiff's rights or the duty of this court in the premises?
Moreover, does such an admission change the character or
nature of the act of the court?   We think not.   As before
stated, the court's action clearly comes within the principle

Ketchum Coal Co. v. Dist. Ct. of Carbon County et al., 48 Utah 342.

stated in Cyc., and in law also amounts to an arbitrary re-
fusal of the court to proceed to try and determine certain
issues between certain parties in a pending action.

The further question, however, is: Has the plaintiff an
adequate remedy by appeal? Clearly not. The dis-
missal does not dispose of the case as between the
plaintiff and the other defendants. The case, under our
procedure, therefore, cannot be appealed until final judg-
ment is entered therein between all the parties. When that
is done all parties to the action may, however, be satisfied
with the judgment and hence there may be no cause for ap-
peal except on the act of the court in dismissing the case
against the company. In the meantime the question of dam-
ages as to the other defendants may be tried to a jury. If
the plaintiff then must await final judgment as to the other
defendants before it can appeal, what are its rights to the
strip and its improvements thereon pending the action on
appeal? It must thus stand bound hand and foot notwith-
standing its order of condemnation and possession until the
action is finally determined, and thus it will be held helpless
until this court has passed upon the questions presented by
the appeal. That may not occur for several years. The pro-
visions of our statute, which, under certain restrictions that
have been complied with by the plaintiff in this case, give the
condemnor immediate possession of the land sought to be con-
demned and the right to improve it and to put it to the con-
templated public use pending the action regardless of the
time it may be pending could thus be entirely frustrated.
Moreover, the plaintiff must thus submit to have its action
tried in parts and unless, in case of an appeal, the judgment
in favor of the other defendants for damages should be re-
versed by this court the plaintiff may be required to pay
costs and defray the expenses incident to two jury trials. In
view of all this, we are of the opinion that the only adequate
remedy plaintiff has under the circumstances is a writ of
mandate requiring the District Court to reinstate the case as
against the company and to hear and determine the issues as
in any other case and to enter such a judgment upon all the
issues as to the court may seem just and right.

This brings us to the second branch of the application. Early in June of this year plaintiff's counsel filed a motion in which they asked the court for an **18, 19, 20** order requiring all of the corporation defendants to permit the plaintiff to inspect and take copies, if so desired, of "all books, contracts and resolutions, * * * all mortgages, or deeds of trust, * * · * all books, documents, papers, memoranda, and data, * * * all correspondence, telegraphic or otherwise, originals or carbons, or letter press copies thereof, * * * all bonds, papers, documents, memoranda, data in the possession or under the control of any of said corporations," etc. The motion merely limited the things sought to be inspected or copied to such as might be material or relevant, or might shed some light upon the issues tendered by the pleadings and such as concerned the dealings of the corporations among themselves. The court refused to make the order upon the ground that it did not have the power to do so. Plaintiff now asks that we compel the court to vacate that order, and that it be required to consider the motion upon its merits and to pass upon it. Here again all the corporate defendants insist that mandamus is not the proper remedy, and that the motion is too sweeping and indefinite regarding the things of which inspection is asked, etc. While we are of the opinion that the court gave the wrong reason for its refusal to require the corporate defendants to permit inspection and that the court, under our statute, has ample power to make such an order, and that courts in furtherance of justice should exercise the powers vested in them so that a full disclosure and development of all relevant and material facts, under the supervision and control of the court, may be secured, yet we are also of the opinion that the motion is too sweeping and indefinite. We are also further of the opinion that although the defects of the motion just stated were removed, yet the writ should not issue for the reason that mandamus is not the proper remedy. The matter of obtaining evidence by inspection or otherwise is a matter that may arise in any case and thus may be a matter incident to the ordinary course of procedure therein. If the court errs in granting or refusing inspection the party

aggrieved may preserve his exception to the court's ruling and may present it to this court on appeal after final judgment. It may be, however, that the party who feels aggrieved at the time the ruling is made may, nevertheless, be well satisfied with the result ultimately reached by the court. In such matters, while the ruling of the court may in some instances cause a retrial of the case and thus cause delay in the ultimate determination of the litigation, it is not like the other branch of this application, a refusal to proceed to try and determine the issues presented by the pleadings, and produces no more delay or inconvenience than occurs in actual practice almost daily. If writs of mandate could be obtained every time a court refuses to order the production of some evidence deemed material and relevant by one of the parties to an action, or every time a court refuses to grant inspection of certain documentary or other evidence, we would hardly have time to meet the legitimate and ever increasing appellate work of this court. In connection with this question plaintiff's counsel have argued various propositions, which, if the questions were properly before us, would require attention. In view, however, of the conclusion reached that mandamus is not the proper remedy we refrain from discussing and passing upon these propositions. We are clearly of the opinion that upon the second branch of the application stated above mandamus is not the proper remedy.

It is therefore ordered that a peremptory writ of mandate issue requiring the District Court of Carbon County to vacate its order or judgment dismissing the action against the company, and to reinstate the company as a party defendant in the action to the same extent as though no order of dismissal had been entered, and to proceed to try and determine all the issues with regard to title presented by the pleadings of the respective parties whether legal or equitable, and to make such final disposition upon the merits of such issues, and to enter such judgment or judgments as to the court may seem just and proper. Plaintiff to recover costs of this proceeding.

STRAUP, C. J., and McCARTY, J., concur.