RUSHING v. BUSH, Judge et al.

No. 14743.

Court of Civil Appeals of Texas. Dallas.

July 17, 1953.

Rehearing Denied Oct. 2, 1953.

Johannes & Kelsoe, Dallas, for relator.

David C. McCord, Jr., Dallas, for respondents.

YOUNG, Justice.

This is an action for writ of mandamus pursuant to art. 1824, V.A.C.S.; relator seeking issuance thereof against Hon. Paine L. Bush, Judge of the 68th District Court, Dallas County, in pending suit No. 63203–C, by S. J. Rushing, father and next friend of Edith Elaine Rushing, a minor, against John Wesley Jones, W. D. (Bill) DeSanders, Lone Star Olds Cadillac Company, and Winston Morris; the petition by amendment including respondent Morris Hermanos (Morris Bros.), S. A., a Mexican corporation, residing in the City of Mexico, Republic of Mexico. It is alleged that service has been obtained on Morris Hermanos, S. A., as authorized by art. 2039a, V.A.C.S., but that Judge Bush has refused to assert jurisdiction over such nonresident corporation; and here prays for relief commanding respondent Bush to take and assume statutory jurisdiction of aforesaid corporate defendant.

Relator's action against defendants was for damages growing out of personal injuries sustained by said Edith Elaine Rushing on or about January 20, 1952, while riding in an automobile on Highway 77, Dallas County; claiming that a 1951 Oldsmobile driven by defendant John Wesley Jones negligently collided with plaintiff's car, resulting in aforesaid serious and permanent injuries. The amended petition, paragraph 5, alleged: "In the further alternative, plaintiff would show that the defendant John Wesley Jones, at the time and on the occasion of this said accident, was in the employ of Morris Hermanos, S. A., and/or the Lone Star Olds Cadillac Company in that the said Morris Hermanos, S. A., through one of its duly licensed

officers, viz., Winston Morris, and/or the Lone Star Olds Cadillac Company, through its General Manager, one Bill DeSanders, had orally agreed jointly to sell the 1951 Oldsmobile bearing Texas License number DV5525 which the said John Wesley Jones was, on the occasion of the accident, transporting to Dallas, Texas, for delivery to the Lone Star Olds Cadillac Company. Plaintiff would show that the agreement between the defendants Morris Hermanos, S. A. and/or Lone Star Olds Cadillac Company was in the nature of a joint venture in the selling of this automobile and that the said defendant John Wesley Jones was performing services for and on behalf of each of these said defendants and/or both of them and was in the scope of his employment on behalf of each of these said defendants and/or both of them at the time and on the occasion of the accident in question. That under these circumstances, the defendants Morris Hermanos, S. A. and Lone Star Olds Cadillac Company are both jointly and severally liable for the injuries sustained by your plaintiff as more fully hereinafter set forth."

Touching above allegations and pursuant to Rule 169, Texas Rules of Civil Procedure, (Request for admissions), the following questions among others, were propounded to defendants and answers made thereto, subject to objections for inadmissibility, interposable at the trial: "1. That Winston Morris is a resident of Mexico City, D.F., Mexico." Answered, "Admitted." Question 4: "That on or about the night of January 19, 1951, Winston Morris and family spent the night in Harlingen, Texas." Answered, "Admitted." Question 5: "That on the following morning (request 4), Winston Morris hired John Wesley Jones, a negro, to drive the 1951 Oldsmobile, Texas license No. DU–5525, to Dallas, Texas." Answered, "Denied. Winston Morris, as an individual, did not hire John Wesley Jones but acting solely in his capacity as agent for Morris Hermanos, S. A., a corporation, he agreed to pay Jones to drive an automobile to Dallas, Texas, for said corporation. John Wesley Jones was never at any time either an employee or agent of Winston Morris." Question 7: "That Winston Morris agreed with John Wesley Jones to pay additional money to him when said Oldsmobile was delivered in Dallas." Answered, "Denied. Winston Morris as an individual did not agree with John Wesley Jones to pay additional money to him when said automobile was delivered in Dallas, but acting solely in his capacity as an agent of and for Morris Hermanos, S. A., a corporation, he agreed, for said corporation, to pay additional money to Jones when said automobile was delivered to Dallas, Texas." Question 8: "That John Wesley Jones then left Harlingen, Texas driving said 1951 Oldsmobile, Texas license No. DU–5525." Answered, "Admitted." Question 9: "That John Wesley Jones was ordered to deliver said Oldsmobile to Bill DeSanders of Lone Star Olds Cadillac Company." Answered, "Denied. Jones was directed to meet Winston Morris and follow him to Dallas."

Art. 2039a, sec. 1, reads: "The acceptance by a non-resident of this State or the acceptance by his agent, servant or employee of the rights, privileges and benefits extended by law to such persons of operating a motor vehicle or motorcycle or of having the same driven or operated within the State of Texas shall be deemed equivalent to an appointment by such non-resident and of his agent, servant or employee, of the Chairman of the State Highway Commission of this State, or his successor in office, to be his true and lawful attorney and agent upon whom may be served all lawful process in any civil action or proceeding now pending or hereafter instituted against said non-resident, his agent, servant or employee, growing out of any accident, or collision in which said non-resident, his agent, servant, or employee may be involved while operating a motor vehicle or motorcycle within this State, either in person or by his agent, servant or employee, and said acceptance or operation shall be a signification of the agreement of said non-resident, or his agent, servant or employee that any such process against him or against his agent,

servant, or employee, served upon said Chairman of the State Highway Commission or his successor in office, shall be of the same legal force and validity as if served personally. Service of such process shall be made by leaving a certified copy of the process issued in the hands of the Chairman of the State Highway Commission in Texas at least twenty (20) days prior to the return date thereof, to be stated in said process, and such service shall be sufficient upon said non-resident, his agent, servant or employee, provided, however, that notice of such service and a copy of the process be forthwith sent by registered mail by the Chairman of the State Highway Commission to the non-resident defendant, his agent, servant or employee." Acts 1929 as amended Acts 1949, 51st Leg., p. 498, ch. 272, sec. 1.

Certified copy of the process above mentioned showing service upon Chairman of State Highway Commission is attached to the petition for mandamus; also the certificate of E. H. Thornton, Jr., Chairman, as in compliance with sec. 4, art. 2039a; which latter instrument reads: "Comes now E. H. Thornton, Jr., Chairman of the Texas Highway Commission in the above styled and numbered cause, and certifies to the Court as follows: That on March 3, 1953, I was served by the Sheriff of Travis County with citation and copy of plaintiff's 1st amended original petition in Cause No. 63203–C in the District Court of Dallas County, styled S. J. Rushing vs. John Wesley Jones, et al., which I immediately caused to be forwarded to the defendants, Morris Hermanos, a corporation, Reforma 108, Mexico D.F. Mexico, by U. S. registered mail, return receipt requested, registry number 92376; That on March 16, 1953, I received registered letter return receipt from the Post Office Department in Austin, Texas, showing that letter containing citation and petition was delivered to 'W. S. Morris, Pres.', said receipt is attached hereto and made a part hereof. Witness my hand and official seal in Austin, Texas this the 20th day of March 1953. (s) E. H. Thornton, Jr."

On March 23, 1953, by permission of Court, a pleading of amicus curiae was filed by Hon. D. C. McCord, duly licensed attorney and member of the Dallas, Texas Bar, suggesting lack of jurisdiction over defendant Morris Hermanos, S. A., alleged as apparent on face of the record and plaintiff's petition, upon grounds in substance that said defendant, a Mexican corporation with principal place of business in Mexico City, Republic of Mexico, (1) "is not doing business within the State of Texas, and therefore, is not amenable to the jurisdiction of this Court"; (2) the terms of Article 2039a of the Revised Civil Statutes of Texas do not apply to a resident of a foreign country such as said corporate Mexican defendant; (3) said statute does not authorize "service, as therein provided, upon a nonresident where the vehicle involved in the alleged collision, as appears from the facts of plaintiff's petition on file herein, was not being operated at the time of said collision by said nonresident defendant, but was being operated by another person, and said nonresident defendant was not in said vehicle at said time." Further points are to the effect that the requirements of art. 2039a and various subdivisions were not substantially complied with. The order of respondent (Judge Bush) of date April 16, 1953, recites in part that upon hearing of the "motion of Plaintiff for judgment over and against the Defendant Morris Hermanos, S. A., * * * and the Answer of Amicus Curiae filed herein * * * and the Court having heard the evidence, the pleadings and the argument of counsel, it is accordingly Ordered, Adjudged and Decreed that the Answer of the Amicus Curiae herein be in all things sustained, and the Motion for Judgment by Plaintiff over and against the Defendant Morris Hermanos, S. A., be, and is here in all things denied, and Plaintiff's suit herein as against the Defendant Morris Hermanos, S. A., is hereby dismissed for lack of jurisdiction"; to which due exception was taken.

In the initial paragraph of 18 A.L.R.2d Annotations pages 544, 545, is this edito-

rial statement with footnote: "Statutes in all the forty-eight states and the District of Columbia have now made provision for constructive or substituted service of process upon nonresident motorists becoming involved in automobile accidents upon the highways of the state where the action for personal injuries or damages is brought. Although varying in details, such statutes generally provide that by using the highways, the nonresident motorist will be deemed to have appointed some state official as his agent for service of process in such actions as fall within the purview of the statute. * * * Note (1) The validity of such statutes has been sustained so long as they make reasonable provision for notice to the nonresident. See the annotation in 35 A.L.R. page 951, supplemented in 57 A.L.R. 1239, and 99 A.L.R. 130. As to the construction and application of such statutes, see 82 A.L.R. 768, supplemented in 96 A.L.R. 594, 125 A.L.R. 457, and 138 A.L.R. 1464, 'Construction and application of statute providing for constructive or substituted service of process on nonresident motorists'; 148 A.L.R. 1217, 'Statute providing for constructive or substituted service of process upon nonresident motorist as applicable where accident occurs when motor vehicle or the person injured or property damaged was not on highway'; 155 A.L.R. 333, 'Who is subject to constructive or substituted service of process under statutes providing for such service on nonresident motorists.' * * *."

Consistent with the foregoing annotations and the principles therein discussed and followed in State decisions the country over, on October 24, 1952, we denied a writ of prohibition in companion suit numbered 63573–B, styled Alvin B. Sawyer v. John Welsey Jones et al., brought by other parties against the same defendants. It was there sought by amicus curiae suggestion to invalidate similar service upon Winston Morris, perforce of which Judge Thornton had been vested with the jurisdiction conferred by statute over said Mexico defendant; our jacket notation in the Sawyer case reading as follows: "The fact situation here is rather a narrow one. We conclude, however, that substituted service upon the nonresident defendant Morris is within the purview of Article 2039a, V.A.C.S. * * *."

The precedent just cited inevitably impels a like ruling here. However, because of earnestness of counsel, both in briefs and oral argument, we will consider further the counter points presently advanced by respondents. They urge in effect: (1) That the Court of Civil Appeals has no jurisdiction to thus peremptorily direct a trial court "to set aside an order involving judicial discretion"; (2) that the 68th District Court "had no jurisdiction over the person of Morris Hermanos, S. A., by virtue of an attempted service of citation under the provisions of art. 2039a, V.A.C.S."; (3) that said statute "is void for uncertainty and ambiguity in that it does not direct by whom the copy of the process served upon the Chairman of the State Highway Commission shall be certified"; (4) challenging constitutionality of art. 2039a "in that it denies due process under the State and Federal Constitutions." Our discussion of points just outlined will be generally in inverse order.

In the first place, this Court has already passed upon the validity of art. 2039a. See Jacobsen v. Brown, Tex.Civ.App., 105 S. W.2d 1108, 1110, where we held: "It is the settled law that a state may not withhold from nonresident individuals the right of doing business in the state. The privileges and immunities clause of the Federal Constitution (Amendment 14) safeguards to the citizen of one state the right to pass through or to reside in any other state for the purpose of trade, etc. However, courts recognize the right of a state to regulate the use of its highways, and such regulation may be extended to include nonresidents as well as residents. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. In keeping with this right of a state, the Legislature of Texas passed a statute (article 2039a, as amended Acts 1933, 43rd Leg., p. 145, c. 70 [Vernon's Ann.Civ.St. art. 2039a]), which, because of public necessity and convenience, subjects a non-

resident motor vehicle owner using the public highways of this state, to the jurisdiction of the state courts by service on a representative of the state government to accidents or collisions occurring on the public highways and streets of this state. * * *" Similarly, no Federal Court has questioned the basic constitutionality of art. 2039a, or comparable legislation of other States, "so long as they make reasonable provision for notice to the nonresident." 18 A.L.R.2d Annotations, supra; the requirements of the Texas statutes in such regard being undoubtedly ample and adequate.

In the same connection, the word "nonresident" of the law is sufficiently broad, so as to include not only natural persons but corporations; Jones v. Pebler, 371 Ill. 309, 20 N.E.2d 592, 125 A.L.R. 451; having also been uniformly held as inclusive of residents of foreign countries. Gianetto v. LaDelpha, 278 App.Div. 179, 104 N.Y.S.2d 362; Ewing v. Thompson, 233 N.C. 564, 65 S.E.2d 17; Lulevitch v. Hill, D.C., 82 F.Supp. 612. Nor is paragraph 2, sec. 1, of the Act viewed as void for uncertainty and ambiguity in omitting to state by whom the copy of process in question left with the State Highway Chairman, shall be certified. Surely such a certification (as in this case) by the official issuing the particular writ is in sufficient compliance with the statute.

Respondents point to various so-called deficiencies of service herein, when tested by the several sections of art. 2039a; section 4 in connection with the certificate of Chairman, State Highway Commission, further providing that: " * * the occurrence or performance of any of the duties, acts, omissions, transactions or happenings contemplated or required by this Act, including the wording of any registered letter received, and his certificate, as well as the wording of said registered letter receipt, shall be accepted *as prima facie evidence and proof* of the statements contained therein"; and section 5, that " * * * the *presumption* shall obtain, unless rebutted, that such *process was transmitted* by the Chairman of the State Highway Commission and received by the defendant after being deposited in the mail by the Chairman of the State Highway Commission." (Emphasis ours.)

But, returning to the point under consideration, it is well settled that statutory provisions with respect to the entering of default judgments are to be strictly construed; 25 T.J. p. 404, sec. 40; in other words, in the obtaining of jurisdiction over a defendant and thereby authorizing the rendition of default judgment against him, the required procedure of issuance and service of process must be closely observed. 25 T.J. 721, sec. 269. However, the objections as outlined are viewed as technical rather than having substance in fact, and, as we did in the companion case of Sawyer v. Jones, a comparison of the fact situation delineated in paragraph 5 of plaintiff's amended petition, alongside the statutory language of sec. 1, art. 2039a, satisfies us, at this juncture at least, that aforesaid allegations are likewise "within purview of the statute."

The authority of this Court expressed in art. 1824, R.S. is that: "Said Courts or any Judge thereof, in vacation, may issue the writ of Mandamus to compel a Judge of the District or County Court to proceed to trial and judgment in a cause, returnable as the nature of the case may require." We fully recognize that under the quoted statute the writ of mandamus lies to the mentioned Courts *only* when the duty to be performed requires no exercise of judicial discretion; 28 T.J. 574, sec. 23. Here the respondents mistakenly assume from the judgment recital of "After having heard the evidence," that the court's action was upon a conflicting fact situation; when in truth all facts incident to the hearing were undisputed; the responsibility of Judge Bush at most extending to the construction of such statute. And when, as here, the procedural requirements of art. 2039a have been met, the trial judge was duty bound to enforce the statute in matter of substituted service just as he would be required to give effect to any other statutory method of citation.

While there are instances where the trial court's ruling on a question of law has been held to involve judicial discretion, Matlock v. Smith, District Judge, 96 Tex. 211, 71 S.W. 956, the instant case is not of that class. The case here on the other hand is one where the court has declined to take jurisdiction or has mistakenly decided that it does not have jurisdiction, thereby causing a dismissal of same; such negative action being tantamount in a legal sense to a refusal to try the cause as regards defendant Morris Hermanos, S. A. "As stated in the earlier annotation, although the application of the rule that mandamus lies to compel an inferior court to exercise jurisdiction when it has erroneously decided that it does not have jurisdiction is by many courts subjected to various limitations and conditions, practically all courts uphold the general rule itself. * * * Where a court declines jurisdiction by mistake of law, erroneously deciding as a matter of law, and not as a decision of fact, that it has no jurisdiction, and declines to proceed in the exercise of its jurisdiction, mandamus will issue by a superior court compelling it to proceed, unless there is a specific and adequate remedy by appeal or writ of error." 82 A.L.R. 1164, 1168. "Unless there is a specific and adequate remedy by appeal, writ of error, or other method of review, the foregoing is true (right of mandamus) where a court declines jurisdiction by mistake of law, erroneously deciding as a matter of law and not as a decision on the facts that it has no jurisdiction, and either declines to proceed or disposes of the case." 55 C.J.S., Mandamus, § 76, p. 131. "When a court has undoubted jurisdiction of a cause it is never optional to accept or reject such jurisdiction at the pleasure or preference of that court. Although the judgment or discretion of a judicial officer cannot be controlled after he has assumed jurisdiction of a controversy, mandamus lies to compel him to assume jurisdiction of, proceed with, and hear and determine an action, * * *." State ex rel. Pacific Coast Adjustment Co. v. Taggart, Justice of the Peace, 159 Wash. 201, 292 P. 741, 742. See also Ketchum Coal Co. v. District Court of Carbon County, 48 Utah 342, 159 P. 737, 4 A.L.R. 619, 625. Texas courts are generally in accord with the doctrine above stated. In 28 T.J. 575, sec. 33, it is stated: "Nor is the necessary exercise of judgment by a judge in determining a question of law the exercise of judicial discretion in the sense that his decision upon the law cannot be revised by mandamus; on the contrary, if a judge, by placing a particular construction upon the law, deprives a citizen of an unquestioned legal right, in such manner that there is no other adequate remedy, mandamus will lie to review his judgment or decision upon such question. Thus, the writ will issue to compel a trial judge to act whenever he refuses to do so by reason of an unwarranted construction of the law or an erroneous assumption that he has no jurisdiction." See Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063; McPhail v. Scarborough, District Judge, Tex.Civ.App., 16 S.W.2d 858; Willis v. Granger, Tex.Civ.App., 195 S.W. 2d 831.

Finally and obviously, relator has no adequate remedy at law from the instant order of dismissal. In a situation sufficiently analogous, our Supreme Court has so held. See Terrell v. Greene, Judge, 88 Tex. 539, 31 S.W. 631, 635, where the Supreme Court disposed of the identical point (inclusive also of respondent's major contention just above discussed) in the following terms: "* * * The contention of the respondent may be stated thus: In the decision of every question of law the judge must exercise his judgment, and that the exercise of such judgment is a judicial discretion, which cannot be revised upon mandamus; therefore the decision of a judge upon the law cannot be revised by this writ. If this be correct, then no wrong which may be done by a district judge in the determination of any legal question can be so revised. If a judge of the district court, or other officer, by the construction placed upon the law, deprives a citizen of an unquestioned legal right, under circumstances that the citizen has no right of appeal, and, therefore, no other adequate remedy, then a court having power conferred upon it by

law to issue a writ of mandamus has the right to review the judgment or decision of the trial court or officer upon such question." Extensive discussion of above principle of law may be found in Ketchum Coal Co. v. District Court of Carbon County, supra.

It follows that writ of Mandamus should issue to respondent Paine L. Bush, as prayed.

DIXON, Chief Justice (concurring).

■■ I think that a writ of mandamus may properly issue to compel a trial judge to proceed to the trial of a cause of action when he refuses to do so on the erroneous assumption that as a matter of law he has no jurisdiction. The rule applies where the trial court erroneously dismisses a cause of action as to one of several defendants for lack of jurisdiction, if the complaining party has no adequate remedy by appeal. Justice Young has cited authorities and there is no need for me to name them again.

The record now before us presents such a case. Relator as plaintiff sued several defendants, one of whom is Morris Hermanos, S. A., of the Republic of Mexico. The trial court declined to give relator a trial on the merits as to defendant Morris Hermanos, S. A., but instead dismissed plaintiff's cause as to said defendant, the order of dismissal reciting that such action was taken "for lack of jurisdiction." The cause as to the other defendants was allowed to remain on the trial docket.

■ The facts disclosed by the record show that art. 2039a, V.A.C.S., has been complied with, including the provision for notice to the nonresident. The trial court did in my opinion have jurisdiction over the defendant Morris Hermanos, S. A. Relator is therefore entitled to have his case against Morris Hermanos heard on its merits in the trial court, at the same time the case goes to trial as to the other defendants.

■ I do not believe that under these circumstances the relator has an adequate remedy by appeal. My views on this particular subject are well expressed by the Utah Supreme Court in a case in which the trial judge, as in the instant case, had under a mistake of law dismissed one of several defendants. In directing that a writ of mandamus issue, here is what the Utah Supreme Court said:

"The further question, however, is: Has the plaintiff an adequate remedy by. appeal? Clearly not. The dismissal does not dispose of the case as between the plaintiff and the other defendants. The case, under our procedure, therefore, cannot be appealed until final judgment is entered therein between all the parties. * * * Moreover, the plaintiff must thus submit to have its action tried in parts and unless, in case of an appeal, the judgment in favor of the other defendants for damages should be reversed by this court the plaintiff may be required to pay costs and defray the expenses incident to two jury trials. In view of all this, we are of the opinion that the only adequate remedy plaintiff has under the circumstances is a writ of mandate requiring the district court to reinstate the case as against the company and to hear and determine the issues as in any other case and to enter such a judgment upon all the issues as to the court may seem just and right." Ketchum Coal Co. v. District Court of Carbon County, 48 Utah 342, 159 P. 737, 744, 4 A.L.R. 619.

I agree that the writ of mandamus in this case should issue as prayed for by relator.

CRAMER, J., concurs in the above concurring opinion.