THE CHICAGO AND MILWAUKEE ELECTRIC RAILROAD CO.

*v.*

HELEN E. DIVER *et al.*

*Opinion filed December 22, 1904.*

1. EMINENT DOMAIN—*defendant not required to prove ownership.* Petitioner in condemnation is required, at its peril, to ascertain and name in the petition the true owner of the land sought to be condemned, and the person named is not required to prove title.

2. SAME—*petitioner desiring to question cross-petitioner's allegation of title must take issue.* A cross-petitioner asking an award of damages to land not taken must allege ownership of the land, but if petitioner desires to question such allegation it must raise the issue by appropriate pleadings.

3. SAME—*question of ownership must be decided before jury is empaneled.* The issue of the ownership of land, in a condemnation proceeding, is a preliminary one, which must be litigated and determined before the jury is empaneled to assess damages.

4. SAME—*damages attending failure to fence right of way for six months may be considered.* In the absence of a stipulation that petitioner, a railroad company, will fence its right of way as the road is constructed, it is proper to instruct the jury that under the statute the petitioner has six months to fence its road after completion, and that the damages, if any, attendant upon the keeping of the right of way open during that time are proper for the consideration of the jury.

5. SAME—*when damages may be estimated with reference to any motive power.* If the petitioner in a proceeding to condemn a railroad right of way is not willing to stipulate what motive power it will use, the defendants have the right to have their damages estimated with reference to any motive power which petitioner, under its charter, might elect to use.

6. INSTRUCTIONS—*when instruction as to danger from fire as an element of damage is not prejudicial.* An instruction as to the danger from fire as an element of damage in a proceeding to condemn a railroad right of way, which is proper and applicable to the proof as to the other defendants, is not improper as to one of the defendants who had no buildings on her land, where the evidence showed that fact and the jury viewed the premises.

7. SAME—*when parties are estopped to complain of instructions.* If the instructions of both parties to a condemnation proceeding assume that damages are to be assessed to lands not taken, neither can complain of such assumption in the other's instructions.

8. JUDICIAL NOTICE—*courts will not take judicial notice that a railroad is fenced as it is built.* Courts will not take judicial notice, as being a matter of common knowledge, that the right of way of railroad companies is fenced as the track is constructed.

APPEAL from the County Court of Lake county; the Hon. D. L. JONES, Judge, presiding.

F. S. MUNRO, and CHARLES WHITNEY, for appellant.

HANNA & MILLER, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a petition filed by the appellant company for the condemnation of a right of way for the line of its road on and over certain tracts of lands and town lots belonging to the appellees, respectively.

The jury awarded the appellee Helen E. Diver $2000 for land taken for the right of way and $2600 for damages occasioned to land not taken, and the verdict was approved by the court. Counsel for the appellant concede that the amount awarded her for the land taken for the right of way is fair and reasonable, but insist that the damages awarded for lands not taken is excessive and not supported by the proofs.

Mrs. Diver owned a tract of land containing approximately 28 acres, situated between State street on its west, in North Chicago, and the Chicago and Northwestern Railway Company's tracks on the east. A narrow strip of land belonging to one A. C. Frost was situate between State street and a portion of Mrs. Diver's tract. The shape of Mrs. Diver's tract of land is substantially that of a square. The right of way of the appellant company, of the width of 70 feet, enters the tract near the north-west corner thereof and passes in a southerly direction through the tract, passing out near the south-west corner, leaving a strip west of the right 'of way 16.30 feet wide at the northernmost end and of the width of 128.54 feet at the south end. The length of the strip

is 1160 feet or thereabout, and it contains 2.14 acres. The right of way contains 1.815 acres, leaving 24 acres east of the right of way. The company stipulated it would construct two crossings across its right of way, each 32 feet in width, at points designated on a plat that was produced before the jury. The crossings were for the purpose of providing access from the lands on the west side of the right of way to the larger tract on the east thereof, and by means of which crossing the 24-acre tract would, in a degree, be made accessible from State street. The strip west of the right of way was well shown to be of the value of $1000 per acre. That was the value per acre placed upon the land taken, and the appellant company concedes that such valuation was reasonable and fair. The strip was clearly worth that much, or more, per acre before the location of appellant's railroad. The lowest estimate of the damage to this tract was fifty per cent of is value. Seventy-five per cent of its value was the estimate of some of the witnesses. If computed at fifty per cent, the damages to that tract would be practically $1100. Deducting this sum from $2600, the total amount allowed for damages to lands not taken, would leave $1500 as damages to the 24-acre tract east of the right of way. The testimony of the witnesses produced on behalf of Mrs. Diver was, in substance, that the 24-acre tract was best adapted to and most valuable for subdivision into lots and blocks for residence purposes, and that for such purposes it would be depreciated in value from ten to fifteen per cent. All of the witnesses, as counsel for the appellant in their brief concede, practically agreed that the land was worth $1000 per acre for subdivision purposes. Estimating the depreciation at ten per cent, the lowest estimate of the percentage of depreciation for such purpose, the damages to this tract would be $2400, which, added to the damages of $1100 clearly shown to be occasioned to the strip west of the right of way, would make the total of the damages to the land of Mrs. Diver not taken $3500,—$900 greater than the judg-

ment sought to be reversed. Witnesses for the appellant company were of the opinion, and so testified, that the value of the 24-acre tract would be enhanced for manufacturing purposes by the construction of the railroad contemplated by the appellant company, and that its value for such purposes would be as great as it would have been for subdivision purposes before the construction of the railroad. There was a conflict in the testimony as to the purpose for which the land was best adapted and for which it was most valuable, and we are unable to say there was a decided weight of testimony supporting the view of the appellant company. The jury visited and inspected the premises and the surroundings, and had superior facilities and opportunity thereby for applying the testimony relative to this conflict and for determining whether the location of appellant's railroad would so affect the property as to render it as valuable for manufacturing purposes after the construction of the road as it was for subdivision purposes prior thereto. The amount allowed for damages to land not taken was clearly within the range of the testimony, and there is no reason we should disturb the verdict on the ground it is not supported by the proof.

The appellee Peter Fortune owned lots Nos. 8 and 9 in Lenox's subdivision of the south half of section 33, etc. He was allowed $240 for the portions of his lots which were taken and was awarded damages in the sum of $300 to the portions not taken. It is urged the amounts so allowed are unreasonable and against the weight of the evidence. Lot 8 lies adjoining to and immediately north of lot 9. The lots have a frontage of 25 feet, each, on State street and extend 125 feet eastward to an alley 16 feet in width. The right of way of appellant's road occupied the alley and extended over the easterly part of both of appellee's lots, taking therefrom a strip of the width of 24.6 feet at the north line of lot 8 and 35.14 feet at the south line of lot 9. The evidence of the greater number of witnesses estimated the value of the parts of the lots which were taken at a somewhat lesser amount

than was allowed. One witness, however, estimated the value of the portions of the lots taken at a greater sum than was awarded. The jury saw the premises and seem to have reached the conclusion that the evidence of this latter witness was entitled to the greater weight. We incline to the same conclusion. The two lots, as appeared from the testimony of all of the witnesses, were worth at least $1000 exclusive of the buildings that stood thereon. One-fifth of lot 8 and one-fourth of lot 9 were actually taken, and it is clear that we cannot say that $240 was palpably an excessive allowance for the parts of the lots that were taken. The allowance of $300 as damages to the parts of the lots not taken was much less than the greater weight of the evidence would have warranted. The lots were materially shortened and were deprived of the benefit of an alley or any means of access to the rear as shortened, except by appropriating a portion of their frontage to that purpose.

Appellee Gibbons owned lot No. 10 in the same subdivision as the Fortune lots. His lot has a frontage of 25 feet on State street and extends eastward 125 feet to an alley 16 feet in width. The right of way of appellant's road covered the alley and extended over the easterly portion of the lot a distance of 35.14 feet at the north line of the lot and 41.18 feet at the south line thereof. The strip taken was valued at $400 by the jury and $300 was awarded as damages to the remainder of the lot. On the property taken there were a frame stable 16 by 22 or 24 feet and a frame water closet. The witnesses who testified as to this property variously estimated the value of the part of the lot that was taken and the damage to the remainder. The witnesses, except two of them, estimated the value of the land taken and the damage to that not taken at greater amounts than were fixed by the award of the jury. One of these two excepted witnesses, James G. Smith, valued the land taken at $100 less than the jury allowed, but he estimated the damage to the land not taken at $100 more than the award. The total of his esti-

mate is the same as the total award made by the jury. The other of the excepted witnesses, one Fred W. Cornish, differed so widely from all others who testified in this case that it is not strange his testimony did not control.

The only complaint as to the verdict and judgment as to the property of appellee Mary E. Thomas is, that the verdict is erroneous because it allowed to her damages to lot No. 2 without any proof that she was the owner of the lot. The petitioner in a condemnation proceeding is required, at its peril, to ascertain and name in the petition the true owner of the land sought to be condemned and taken, and the person so named as owner in the petition is not required to prove title. (*Peoria, Pekin and Jacksonville Railroad Co.* v. *Laurie,* 63 Ill. 264; *St. Louis and Southeastern Railway Co.* v. *Teters,* 68 id. 144.) The petitioner in a cross-petition who prays for an award for damages accruing to land which is not taken must allege in the petition that he or she is the owner of the property alleged to be damaged. If the original petitioner desires to contest the allegation of ownership by the cross-petitioner, he or it must, by appropriate pleadings, raise that issue. It is not contended that any such issue was raised in the case at bar. Had such issue been raised it would not have been submitted to the jury empaneled to assess the damages to be paid the land owner. The jury empaneled in this proceeding had no other duty to perform than to assess the value of land taken and the damages occasioned to land not taken. (*Lieberman* v. *Chicago and South Side Rapid Transit Railroad Co.* 141 Ill. 140.) In a condemnation proceeding, the issue of ownership, if any, is preliminary to the submission of the question of damages to the jury, and is to be litigated and determined before the jury is empaneled to assess the amount to be paid the owner. No question of title or ownership should be presented to the jury empaneled in such a proceeding.

It is urged that the court erred in giving instructions Nos. 1 and 2, and that for such alleged error the judgments

should be reversed. The complaint as to these instructions is, that they are so drawn as to imply that the lands not taken were damaged. These instructions were so carelessly drawn that the criticism is not wholly unfounded. But the implication, if any, was one which the appellant also proceeded upon in the instructions to the jury asked in its behalf. Instructions Nos. 5, 10 and 11 asked and given on behalf of appellant assumed that damages were to be assessed to lands not taken, and the implication in each of these instructions is more definite and direct than in instructions 2 and 3 given at the request of the appellees. Both litigants having proceeded in charging the jury on the theory damages to the lands not taken were established by the proofs, neither can be allowed to urge the action of the other as error. Moreover, there was no substantial ground on which to insist that damages for land not taken should be wholly denied to any of the cross-petitioners.

The complaint that said instruction No. 2 erroneously defined the "character of benefits" to lands not taken which may be deducted from the damages sustained by such property may also be disposed of by saying that instruction No. 19 asked and given at the request of appellant declared the same rule as did instruction No. 2.

Instruction No. 3 for appellees advised the jury that under the statute the appellant company was not required to fence its road until six months after it had completed the same, and that the damages, if any, attending the keeping open of the right of way during that time were proper for the consideration of the jury as an element of damage. This instruction was approved by this court in *St. Louis, Jerseyville and Springfield Railroad Co.* v. *Kirby,* 104 Ill. 345, *Centralia and Chester Railroad Co.* v. *Rixman,* 121 id. 214, and *Centralia and Chester Railroad Co.* v. *Brake,* 125 id. 393. The instruction here given did not, as did the instruction in the case last cited, assume that damages would necessarily attend the keeping open of the farm by the fail-

ure to fence, and the instruction given in that case was for that reason, and none other, condemned. The court cannot, as counsel for appellant urge, take judicial notice, as being a matter of common knowledge, that the rights of way of railroad companies are fenced as the track is constructed. The appellant company could have lawfully stipulated that it would fence its track and right of way at once on taking possession thereof, and thus have removed this element of damage from the consideration of the jury, but it declined to do so, and expressly so framed the stipulation it did submit as to stipulate only that it would construct and maintain fences along its right of way within six months after its line was open for use.

Instruction No. 4 given in behalf of the appellees charged the jury that in assessing damages "their inquiries must be confined to the market value of the land," etc. It is urged that the judgments should be reversed because the instruction did not expressly confine the inquiry of the jury to the "fair cash market value of the land." The jury were expressly informed that the only measure of damages was the "fair cash market value" thereof, by instructions Nos. 1, 13 and 14 given on behalf of the appellees, and also with equal explicitness and directness in instructions Nos. 1, 7, 10 and 20 given in behalf of the appellant. Moreover, the court, in the examination of witnesses, restricted the proof to the fair cash market value of the land, and the jury had no other testimony on which to act. When the instructions are considered as a series there is no room for the contention that the jury were misled to understand that some other standard of value than the "fair cash market price" could be considered by them.

Instruction No. 5 informed the jury that the element of danger by fire, if the jury believed there would necessarily be any increased danger from fire arising from the lawful operation of the contemplated road, or that the cost of insuring the buildings thereon would necessarily be increased

213—3

by the building and operation of the road and that the value of the premises would thereby be decreased, if proven, were proper for the consideration of the jury in arriving at a conclusion on the question of damages. It is urged the judgment in favor of Mrs. Diver should be reversed because of the giving of this instruction, as there was no building on her premises and no proof in her case relating to her premises upon which to base the instruction. The instruction was applicable to the proof of damages to be allowed other property owners defendant to the condemnation proceeding near whose buildings the road would run, and was proper as applied to those cases. The evidence showed that there was no building on Mrs. Diver's land, and the jury visited and viewed her premises, and we cannot conceive that it can be seriously contended that any injury could have resulted to the appellant from the giving of this instruction.

Instruction No. 6 cannot be construed as likely to mislead the jury to believe that the possibilities of injuries to persons or property from the negligent operation of the road was proper for their consideration. The instruction clearly refers only to actual and appreciable injuries resulting from the construction and operation of the railroad in a lawful manner and without negligence.

Instruction No. 7 was intended to advise the jury, and did no more than to advise them, that in estimating the compensation for land actually taken, no deductions could be made because of any benefits which would accrue to other portions of the lands not proposed to be taken. The criticism of this instruction is, that it should have gone further, and informed the jury that benefits to land not taken were proper to be considered in estimating the damages to land not taken. That benefits to land not taken were proper to be considered when arriving at a conclusion as to damages accruing to land not taken was repeatedly made known to the jury in a number of other instructions given at the request of the litigants, and the complaint that it was not again re-

peated in instruction No. 7, which had no relation to the question of damages to lands not taken, is so trivial that it, perhaps, might better have been passed without notice.

The charter of the appellant company authorized it to use steam or any other motive power in propelling its trains. The appellant company was not willing to stipulate that it would not use steam as a motive power, and has no right to complain that the court instructed the jury, as it did in instruction No. 8, that the property owners had the right to have their damages estimated with reference to any motive power the appellant, under its charter, might elect to use. *Lieberman* v. *Chicago and South Side Rapid Transit Railroad Co. supra,* is authority for the principle announced in this instruction.

The only objection to instruction No. 9 not disposed of by what has been hereinbefore said is, that the instruction declares that in arriving at the value of the land the jury may consider its value for the purpose for which it is shown by the evidence to be most available. Counsel for appellant declare that the true rule is, "that the value of the property shall be arrived at upon the basis of the uses and purposes for which it is best adapted." We content ourselves with the observation that we are unable to agree that the judgments should be reversed and new trials awarded because of the giving of this instruction.

The remarks made in disposing of other alleged errors fully answer the criticisms advanced against instructions Nos. 10 and 11 given in behalf of appellees.

The record is free from error reversible in character, and the judgments are affirmed.

*Judgment affirmed.*