THE SANITARY DISTRICT OF CHICAGO, Appellant, *vs.*
MARY BOENING *et al.* Appellees.

*Opinion filed February 17, 1915.*

1. EMINENT DOMAIN—*no issue of ownership or title should be submitted to the jury.* In condemnation cases the province of the jury is merely to ascertain and report just compensation for the land taken or damaged, and no issue of ownership or title should be presented to the jury, as the question of title is a preliminary one, to be determined before the jury is empaneled.

2. SAME—*what evidence should not be submitted to jury in condemnation case.* In a condemnation case, evidence as to whether the defendant owns the land merely to the bank of a river or to the thread of the stream, or whether she has acquired riparian rights, should not be submitted to the jury.

3. SAME—*admissibility of evidence of voluntary sales of similar lands in the vicinity.* Evidence of voluntary sales of similar land in the vicinity of that condemned is admissible upon the question of the value of the land condemned, subject to the sound discretion of the court with respect to the degree of similarity of the lands and the nearness as to time and distance.

4. SAME—*evidence of sales not voluntary or for money is not admissible.* To render evidence of sales of other property competent in a condemnation case the sales must have been voluntary and not forced and must have been for money, and not, in whole or in part, by way of exchange or for other considerations.

5. SAME—*when property cannot be said to have been damaged.* In a condemnation proceeding the measure of damages to property not taken is the difference between the value of the land before the construction of the improvement and its value after such construction, and if the land is worth as much after the improvement as before, then it is not damaged.

6. SAME—*when property is specially benefited.* If property is enhanced in value by reason of the improvement, as distinguished from a benefit to the whole community at large, it is specially benefited notwithstanding other pieces of property near the improvement are likewise benefited, as each piece of property enhanced in value by the improvement is specially benefited within itself, irrespective of the benefit conferred upon other properties.

7. SAME—*what is meant by the term "general benefits."* By the term "general benefits," as used in Illinois, is meant those intangible benefits which are supposed to flow to the general public from a particular improvement; but their effect upon a particular

piece of property is impossible of ascertainment in money value, and they are too speculative to be considered on the question of damages to the remainder.

8. SAME—*special benefits do not become general because common to other property.* Special benefits to particular property do not become general benefits because they are common to other property in the vicinity, and they must be considered in determining whether or not the particular property has been damaged, and if it has, the extent of the depreciation.

9. WATERS—*party alleging that stream is navigable must prove that fact.* One who alleges that a certain stream is navigable has the burden of showing that fact.

10. SAME—*what is necessary to render a stream navigable in fact.* To be navigable in fact a stream of water must, in its ordinary and natural condition, furnish a highway over which commerce is or may be carried on in the customary mode in which such commerce is conducted by water.

11. SAME—*to be navigable in fact a stream must furnish channel of practical utility for commerce.* To be navigable in fact a stream must afford a channel for useful commerce and of practical utility to the public as such, and it is not sufficient that there is enough water in certain seasons of the year to float row boats and small launches.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

EDMUND D. ADCOCK, (P. C. HALEY, and WILLIAM C. ASAY, of counsel,) for appellant.

COBURN & BENTLEY, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This was a proceeding in the circuit court of Cook county brought by the Sanitary District of Chicago to condemn about five acres of land, of which Maria Anna Stein (hereafter referred to as the appellee) was the principal owner. She filed a cross-petition, alleging damages to the remainder of the twenty-acre tract owned by her. On trial before a jury a verdict was rendered allowing $1000 an acre for the land taken and $150 an acre damages to the

land not taken. Judgment was entered on the verdict, and this appeal followed.

The land was sought to be condemned to be used as a part of the Calumet-Sag channel, connecting the main channel of said sanitary district near the Sag with Lake Michigan by way of the Calumet river. The sanitary district proposed to construct a lock in the channel at appellee's property and to build certain controlling works at that point, the channel being 31 feet deep and 160 feet wide at the top. The land in question is located in Cook county, about a mile and a half east of the city of Blue Island, about a mile and a half west of the village of Riverdale, about three miles north of Harvey and about half a mile from the city limits of Chicago. It adjoins the Calumet river. There is some controversy in the briefs and record as to whether appellee owned to the bank of the river and to the center thread of the stream and was entitled to riparian rights therein. The twenty-acre tract, according to the evidence, was black, sandy soil, good for truck gardening, and the greater portion of it under cultivation. The value given by appellant's witnesses varied from $300 to $450 an acre, with no damage to the remainder by the construction of said channel but rather a benefit therefrom, while the value as given by appellee's witnesses varied for the land taken from $1000 to $1500 per acre and the damage to the remainder from $300 to $750 an acre.

A question is raised in the briefs as to whether appellee is entitled to any riparian rights because she had acquired, by twenty years' adverse possession, ownership of a portion of the river bank. All questions with reference to riparian rights and ownership by adverse possession appear to have been submitted to the jury for decision. This court has repeatedly held that in condemnation cases the jury is empaneled merely to ascertain and report just compensation to the owner of the property sought to be taken or damaged; that no issue of ownership should be presented to

the jury, the question of title being preliminary and to be litigated and determined before the jury is empaneled to assess the amount to be paid to the owner. (*Chicago and Milwaukee Electric Railroad Co.* v. *Diver*, 213 Ill. 26; *Chicago and Northwestern Railway Co.* v. *Miller*, 233 id. 508; *Metropolitan West Side Elevated Railway Co.* v. *Eschner*, 232 id. 210; *Chicago and Northwestern Railway Co.* v. *Mechanics' Institute*, 239 id. 197; *City of Chicago* v. *Pick*, 251 id. 594; *Illinois Central Railroad Co.* v. *Roskemmer*, 264 id. 103.) Under these authorities no evidence as to the question of title to the land itself, or whether appellee owned to the bank of the stream or to the center thread thereof, or had riparian rights therein, should have been submitted to the jury for decision. If these were the only questions involved we might not be disposed to reverse because of the admission of this evidence, as there may be some question whether the record is in such shape that appellant can now raise these points. As the case must be reversed for other reasons we have discussed the law bearing on these matters.

Counsel for appellant insist that the verdict is contrary to the decided weight of the evidence. As the case must be tried again we do not find it necessary to consider that question.

Appellant further insists that the court erred in admitting, on behalf of appellee, evidence as to certain sales. Evidence of voluntary sales of similar lands in the vicinity, made at or about the time of the taking, is admissible to aid in reaching the correct value of the land sought to be condemned. The degree of similarity which must exist between the property concerning which proof is offered and the property taken, and the nearness with respect to time and distance, are not governed by any fixed rules. Such questions must, of necessity, rest largely within the sound discretion of the trial judge. (*Aledo Terminal Railway Co.* v. *Butler*, 246 Ill. 406; 2 Lewis on Eminent Domain,—

3d ed.—sec. 662.)   The price paid by the owner seven
years before has been held by this court as inadmissible,
(*Lanquist* v. *City of Chicago,* 200 Ill. 69,) and the re-
fusal to admit evidence of sales three and six years before
was held not reversible error under the facts of the case.
(*St. Louis and Illinois Belt Railway Co.* v. *Guswelle,* 236
Ill..214.)   If there be no actual sales of similar land in
the vicinity, evidence of *bona fide* offers may be admit-
ted.   (*Sherlock* v. *Chicago, Burlington and Quincy Rail-
road Co.* 130 Ill. 403; *City of Chicago* v. *Lehmann,* 262
id. 468; *Illinois Central Railroad Co.* v. *Roskemmer, su-
pra.*)   To render evidence of sales competent they must be
for money, and not, in whole or in part, by way of ex-
change, and should be voluntary and not forced.   (2 Lewis
on Eminent Domain,—3d ed.—sec. 662; *Lanquist* v. *City
of Chicago, supra.*)   Under these authorities we think the
court erred in admitting, on behalf of appellee, the Linder-
man and Fischer sales.   The property sought to be con-
demned was vacant.   The land in both of those sales was
improved with buildings, which were included in the sales.
We are forced to conclude, also, as to the Linderman sale,
that in return for a part of the consideration the owner
assisted in building a switch track.   The Fischer sale con-
sisted of two blocks of land sold together.   After the sale,
it appears from the evidence, to accommodate the seller,
the purchaser agreed to divide arbitrarily the price between
the two blocks.   Moreover, we think the evidence shows
quite conclusively that neither of these pieces of property
was situated so similarly to the one here in question as to
justify the admission of evidence concerning it.

Counsel for appellant also object to the admission of a
sale testified to by witness Quade, insisting that his evi-
dence shows that he was interested in the sale only to the
extent of his commission and was not present and took
no actual part in it; that therefore all he testified to was
hearsay.   His direct testimony may bear this construction.

Counsel, however, did not cross-examine him as to that point. Of course, a witness must have actual, and not hearsay, knowledge as to a sale in order to make such evidence competent. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151; 2 Lewis on Eminent Domain,—3d ed.—sec. 662.) In view of the present state of the record as to this evidence we do not consider the ruling as to its admission reversible error.

Appellant asked the court to give an instruction with reference to damages to the remainder of the property not taken. The court, however, modified the instruction asked by inserting a clause. The instruction as given, with the inserted part in italics, is as follows:

"The jury are instructed that as to the land not taken the true measure of damages is the diminution or depreciation in value, if any, occasioned by the construction of the improvement, and if you believe, from the evidence, that there will be no depreciation in value of the land not taken then there can be no damage to the land not taken, and you should so find. In determining whether the land not taken has been diminished in value, you have a right to take into consideration such benefits, if any, as tend specifically to enhance the value of the property not taken, even though you believe, from the evidence, that other property in the vicinity of such improvement is likewise increased in value from the same cause, *but benefits which are common to all property in the vicinity should not be considered,* and if *by the improvement, taken as a whole,* the land not taken has been benefited as much as it is damaged by the construction of said improvement, then there can be no recovery for damages to said land not taken."

In many decisions this court has held that in a condemnation proceeding the measure of damages to property not taken is the difference in value of the land before the proposed construction and what it would be afterward. If the property is worth as much after an improvement as before

then it is not damaged. If the benefits received from the making of the improvement are equal to or greater than the loss there is no depreciation in the value. There can be no damage to the property without a pecuniary loss. If property is enhanced in value by reason of the improvement, as distinguished from a benefit to the whole community at large, it is said to be specially benefited, notwithstanding that other pieces of property upon or near the improvement are likewise specially benefited. Each piece of property especially enhanced in value is thus especially benefited within itself, irrespective of the benefit that may be conferred by the improvement upon other properties. By the term "general benefits," as used in the decided cases in this State, is meant those general, intangible benefits which are supposed to flow to the general public from a public improvement. The effect of such general benefits upon a particular piece of property would, however, be impossible of ascertainment in money value, and therefore too speculative to be considered on the question of damages to the remainder. The fact that other pieces of property in the vicinity are also specially benefited by the improvement furnishes no excuse for excluding from consideration special benefits to the particular property in determining whether or not it has been damaged, and if it has, the extent of the depreciation. If property is increased in value by an improvement it is a special benefit to the property. The benefit must be such as affects the market value of the land, and where this market value is increased as the effect of the improvement a special benefit results. Any benefits which are not conjectural or speculative and which enhance the market value of such property are to be considered as special benefits and not as general benefits. Special benefits do not become general benefits because they are common to other property in the vicinity. (*Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362; *Metropolitan West Side Elevated Railroad Co.* v. *White,* 166

id. 375; *Davis* v. *Northwestern Elevated Railroad Co.* 170 id. 595; *Fahnestock* v. *City of Peoria,* 171 id. 454; *City of Chicago* v. *Lonergan,* 196 id. 518; *Peoria, Bloomington and Champaign Traction Co.* v. *Vance,* 225 id. 270; *Eldorado, Marion and Southwestern Railroad Co.* v. *Everett,* 225 id. 529; *Brand* v. *Union Elevated Railroad Co.* 258 id. 133.) The jury might understand, in reading the clause inserted by the court in connection with the rest of the instruction, that they had no right to take into consideration, or to offset against any damages which might be sustained, any benefits common to other property in the vicinity of the proposed improvement although such benefits might materially enhance the value of such property, even to the extent of showing there was no depreciation caused by the construction of the said improvement. Under the rule laid down in the decisions just cited this must be held reversible error. Instruction No. 7 given on behalf of appellee was even more misleading in this regard. The jury were told in that instruction that they "should exclude from their minds all consideration of benefits, if any, to accrue from the improvement to the lots or parts of lots not taken, which are common to all the property in the immediate vicinity in which the property in controversy is situated."

Counsel for the appellant contend that the court further erred in giving for appellee the following instruction:

"The court instructs the jury, if you find, from the evidence and your view of the premises, that the property has a certain amount of Calumet river frontage, and further find that such frontage was of a peculiar and special advantage to the property and of value, then you should take the value of such frontage, if any, into consideration in assessing your award for the land taken."

As has already been stated, the question whether appellee owned any riparian rights or river frontage should not have been submitted to the jury. This was a preliminary question for the court to decide. If the court found that

the appellee had river frontage and was entitled to riparian rights, then the other part of this instruction might properly have been given.  Much evidence was submitted on both sides as to the navigability in fact of the Calumet river adjoining this property.  Many, if not all, of the witnesses for appellee, in giving an estimate of the value of the property, considered as one of the material elements of value the river frontage and riparian rights, and apparently also considered as material elements of said value the navigability in fact of the Calumet river.  The evidence showed that the stream at this point had not been meandered by the government.  The court refused to give for appellant the following instructions:

"The court instructs the jury that a party who alleges or claims that a stream is navigable has got the burden of showing that fact, if it be a fact."

"You are instructed that a stream, to be navigable, must furnish a common passage capable of floating vessels for the transportation of property conducted by the agency of man, and a stream is navigable in fact only where it affords a channel for useful commerce and of practical utility to the public as such.  The fact, if it be a fact, that there is water enough in places or at certain seasons of the year for row boats or small launches is not sufficient to make the stream navigable in fact."

"A stream of water to be navigable in fact must in its ordinary and natural condition furnish a highway over which commerce is or may be carried in the customary mode in which such commerce is conducted by water."

Under the holdings of this court in *People* v. *Economy Light and Power Co.* 241 Ill. 290, these instructions stated the law correctly.  This is admitted by counsel for appellee, but it is argued that the evidence so clearly showed the navigability of the stream at this point that the refusal to give them was harmless error.  With this we do not agree. There were no instructions given to the jury covering the

same questions, or, for that matter, any instructions as to when a river is navigable in fact.

For the errors indicated the judgment is reversed and the cause remanded.          *Reversed and remanded.*