(No. 18901.—

THE CITY OF CHICAGO, in trust for the use of schools, Appellee, *vs.* THE CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.* Appellants.

*Opinion filed June 23, 1928—Rehearing denied October 6, 1928.*

GALLAGHER, SHULMAN & ABRAMS, (VINCENT G. GALLAGHER, and MEYER ABRAMS, of counsel,) for appellants.

JAMES TODD, (FRANK S. RIGHEIMER, RALPH W. CONDEE, and WHARTON PLUMMER, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee on June 16, 1927, filed its petition for condemnation of blocks 6 and 7 in Austin Gardens subdivision, on the northwest side of Chicago, in what is known as the Argyle school district. Appellants Samuel and Mary Brown were made defendants as owners of lots 5 to 10, inclusive, in block 6, and appellants David and Minnie Zimmerman as owners of lots 1 to 3, inclusive, in block 7. These are the only lots over which any controversy arises in this case, as appellee agreed on compensation to be awarded as to all other of the eighty lots comprising the two blocks, and the proof as to those lots was merely formal. These two blocks comprise the territory lying south of Cornelia avenue, west of North Austin avenue, north of Roscoe street and east of

North Meade street, in the city of Chicago. Newport avenue extends east and west through these two blocks. The property is for most part vacant. Each block contains forty lots. The case was reached for hearing on December 5, 1927. Counsel for appellants on that day moved for a separate trial as to them, on the ground that David and Minnie Zimmerman were absent from the State, they being then in Miami, Florida. This motion was denied, and the court adjourned until the next day to give opportunity to counsel for appellants to present to the court a draft of an order denying such motion. All appellants here were and are represented by the same counsel. On the following morning the jury was selected and sworn and sent with the sheriff to view the premises. While they were so doing appellee presented a motion setting out that it had agreed with all of the defendants to the petition for condemnation, other than the four appellants, as to compensation to be paid for property taken, and moved for a separate trial as to the four appellants. Appellants' counsel sought to withdraw their motion for a separate trial and objected to appellee's motion. A separate trial was awarded. After the jury returned from viewing the premises, appellants' counsel made an oral objection to the petition on the ground that it was not necessary to take the property for school purposes, and also on the ground that no offer or attempt had been made to agree with appellants as to the value of the property prior to the filing of the petition. These objections were overruled and the cause proceeded to trial.

Appellee called three witnesses on the issue of the value of the property and appellants called four. The evidence showed that a concrete sidewalk had been laid on the north and west sides of blocks 6 and 7, passing in front of appellants' lots. Proceedings to pave the streets in front of their lots had been instituted, and on June 8, 1927, eight days before filing the petition for condemnation, the contract for paving these streets was let. Appellee's witnesses

placed the value on lot 1 in block 7, the same being a corner lot, at $1947.65, which included $947.65 paving assessments for paving North Austin and Newport avenues. Lots 2 and 3 in block 7 were placed at $900 per lot, plus $135 per lot for paving assessments for Newport avenue, making a total for each lot of $1035. The value placed by appellee's witnesses on lots 5 to 10, inclusive, in block 6, is $900 per lot, plus $135 special assessment for the paving of Cornelia avenue, making a total valuation of $1035 for each lot, including the assessments. Appellee's evidence showed that the property is about three-quarters of a mile from the nearest street car transportation and is vacant property. Appellants offered four witnesses, of whom appellant Brown was one. He placed the value on this property at from $125 to $150 per front foot. It is sufficient to say as to his testimony that it was so far in excess of any value supported by any evidence of conditions surrounding the property or of sales made in that vicinity as to render it preposterous and to indicate that his interest in the suit created in his testimony a substantial prejudice. The jury was justified in ascribing to it but little, if any, weight. Other witnesses for appellants placed the value of the property at from $60 to $90 per front foot. They testified that they based their opinions on the development of the community and the fact that they considered it a good location. None of appellants' witnesses told of any sales of property similarly situated or property in that neighborhood. On the other hand, appellee's witnesses testified to various sales of similar property in that vicinity, some of which were made in the early part of 1927, ranging from $20 to $30 per front foot. These lots, with the exception of the corner lots, were 30 feet in width and of a depth of 126 feet. The property described in the testimony of appellee's witnesses as sold was for most part of a greater depth. The jury returned a verdict fixing a value of $1300 for lot 1 in block 7, plus the assessment of $947.65, or a total of $2247.65. The value of

lots 2 and 3 in that block was fixed by the jury at $1100 each, plus $135 for assessments, or a total of $1235 each. The value of lots 5 to 10 in block 6 was fixed at $1000 each, plus the assessment of $135 per lot, or a total of $1135 each. This was above the values fixed by appellee's witnesses and substantially lower than the values fixed by appellants' witnesses. All of appellee's witnesses, and two of appellants' witnesses, testified that they were engaged in the real estate business and had been for a period of years. Appellee's witnesses testified that they had on previous occasions investigated values of real estate for appellee and had testified for appellee as to such values in condemnation proceedings and that they were paid for their services.

Appellants insist the verdict is against the manifest weight of the evidence. They complain that the witnesses of appellee were real estate experts hired in condemnation proceedings, and that the testimony of appellee's witness Perce was based upon sales and investigations made by him three years prior to the filing of the petition. The record shows that when Perce stated that he based his testimony largely upon his investigation of values made nearly three years before, appellants' counsel objected that testimony of that character was incompetent. This objection was overruled. No objection was made to the question as to Perce's opinion of values, and he was permitted to give that opinion. While an opinion as to the value of property situated in a growing community, which opinion is based solely on an investigation made three years prior to the trial, is of but little probative value, and such testimony is subject to objection as to its competency when based alone on an investigation so remote, yet Perce testified that he was familiar with this territory and testified to sales having been made in surrounding territory within a more recent period of time. No objection was raised as to his qualification other than here indicated. The court did not err in permitting him to testify.

It is a rule well settled in this State, that in condemnation proceedings where the jury have viewed the premises and the evidence of values is conflicting, a verdict rendered by the jury within the range of values as shown by the evidence on the trial, and which does not appear to have been the result of prejudice, passion, undue influence or other improper cause, will not be disturbed. (*Forest Preserve District* v. *Kean*, 298 Ill. 37; *South Park Comrs.* v. *Ayer*, 245 id. 402; *Pullman Co.* v. *City of Chicago*, 224 id. 248; *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 id. 547.) The verdict of the jury was within the range of the testimony, which was conflicting, and in the absence of a showing that it was procured by improper means will not be disturbed.

Counsel for appellants contend that arguments of counsel for appellee were unfair and created in the minds of the jury an injurious prejudice against appellants. We have examined the arguments as set out in the abstract and additional abstract. Counsel on both sides failed to confine themselves strictly to the evidence. We are satisfied, however, that the jury were not prejudiced thereby. It rests in the sound discretion of the trial judge to say, under all the circumstances of the case, whether a new trial should be granted on the ground of prejudicial arguments of counsel, and unless it satisfactorily appears from the record that the trial court has abused its discretion in this regard this court will not interfere. (*Appel* v. *Chicago City Railway Co.* 259 Ill. 561; *West Chicago Street Railroad Co.* v. *Annis*, 165 id. 475.) The record does not disclose an abuse of discretion on the part of the trial court in this regard.

Appellants next argue that the court erred in granting a separate trial on motion of appellee subsequent to the selection and impaneling of the jury, after denying appellants' motion for a separate trial made previous to the selection of the jury. It appears from the record that appellee's counsel stated to the court that they had, at the time the

motion for separate trial was made, agreed with all prop-- erty owners, except those represented by counsel for appellants, as to the compensation to be paid for the property. No reason, therefore, appeared for requiring a trial as to all defendants. The statute on eminent domain confers a discretion on the trial court concerning the granting or refusal of separate trials. (Smith's Stat. 1927, sec. 5, p. 1289.) The record is barren of any evidence of injury or prejudice to appellants from the ruling of the court in the matter. The question of separate trial lies in the sound discretion of the trial court. *Chicago and Northwestern Railway Co.* v. *Mechanics' Institute,* 239 Ill. 197; *Martin* v. *Chicago and Milwaukee Electric Railroad Co.* 220 id. 97; *Eddleman* v. *Union County Traction Co.* 217 id. 409.

Appellants next contend that the court erred in denying their motion to dismiss the petition at the conclusion of appellee's evidence on the ground that it failed to prove the necessity for taking the property for school use, and that the petitioner was unable to agree with appellants as to compensation, as required by statute. After the jury was selected appellants sought by oral objection to raise these questions on the hearing. No motion to dismiss the petition raising such issues was made before the jury was selected and sworn. By their failure to raise such issue prior to the selection of a jury they waived their right to do so, and impliedly admitted that appellee had a right to bring the condemnation proceedings and that it was unable to agree with appellants as to values. They cannot now complain and are not permitted to raise these questions in the manner and at the time they sought so to do. *Chicago and Milwaukee Electric Railroad Co.* v. *Diver,* 213 Ill. 26; *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 id. 140.

Appellants next urge that the order granting a separate trial was erroneous, in that it recites that a separate trial was had as to lots 1, 2 and 3 in block 7, and lots 6 to 10, inclusive, in block 6, whereas the Browns also owned lot 5

in block 7, and the verdict and judgment include lot 5 in that block. The record discloses that the order for separate trial did not include lot 5 in block 6, but appellants voluntarily went to trial, made no objection to the testimony offered on the part of appellee as to the value of lot 5 and themselves offered testimony as to the value of that lot. No objection or question was raised in the trial court, and as both the petition and verdict cover lot 5 the question can not now be raised here. Appellants will be held to have waived this error in description in the order granting a separate trial.

It is also urged that the court denied appellants' counsel the right to show values for the highest and best use of the property. It is the rule that property owners are entitled to show the fair cash value of their property when sold for its highest and best use. (*City of Chicago* v. *Lord,* 276 Ill. 544; *St. Louis and Illinois Belt Railway* v. *Barnsback,* 234 id. 344; *Concordia Cemetery Ass'n* v. *Minnesota and Northwestern Railroad Co.* 121 id. 199.) The abstract shows, however, that appellants' witnesses were allowed to testify as to the highest value of the lots, and most of them placed upon the property a value of more than double that found by the jury. While the court sustained an objection to a question asked of appellants' witness Louis Tops as to what would be the highest cash market value per lot of lots 5 to 10, inclusive, in block 6, the abstract shows that the witness nevertheless answered the question, placing the value between $60 and $70 per front foot. It does not appear that appellants were prejudiced by the ruling of the court as to that question.

It is further contended that the trial court erred in returning two judgments on one petition for condemnation. This court in *Chicago and Pacific Railroad Co.* v. *Hildebrand,* 136 Ill. 467, said: "The judgment, [in condemnation,] however, as to each tract is in effect a separate judgment, as much as if rendered in distinct proceedings, and

therefore a reversal of the judgment as to one tract does not necessitate a reversal as to the other tracts." This being the rule, it was not error to render judgments on each of the separate tracts.

There is no reversible error in the record, and the judgment will be affirmed.

*Judgment affirmed.*