Ernest Sabo and Fred J. Allen, Plaintiffs-Appellees, v. T. W. Moore Feed & Grain Company, Berthold C. Humphreys, Jr., and Medford M. Cox, Defendants-Appellants.

Gen. No. 67–50.

Fifth District.

July 26, 1968.

Pope and Driemeyer, of East St. Louis (W. Thomas Coghill, Jr., of counsel), and Wagner, Conner, Ferguson, Bertrand and Baker, of East St. Louis (Bernard H. Bertrand, of counsel), for appellants.

C. E. Heiligenstein, of Belleville, for appellees.

GOLDENHERSH, J.

Defendants, T. W. Moore Feed & Grain Company, hereafter called Moore, Berthold C. Humphreys, Jr., hereafter called Humphreys, and Medford M. Cox, hereafter called Cox, appeal from judgments entered upon jury verdicts in favor of plaintiffs, Ernest Sabo, hereafter called Sabo, and Fred J. Allen, hereafter called Allen, in plaintiffs' actions for personal injuries.

The complaint, containing one count for Sabo and one for Allen, alleges that by reason of the negligence of the defendants, an automobile driven by Cox, and a truck

owned by Moore and driven by Humphreys, collided; as the result of the collision cattle being transported in the truck were released; shortly thereafter one of the cattle ran into the automobile owned and driven by Sabo, in which Allen was a passenger.

The evidence shows that at approximately 1:00 a. m. on August 27, 1965, Humphreys was driving Moore's tractor-trailer north on Route 159. The trailer contained 52 white-faced Hereford steers. Humphreys testified that he was traveling at a speed of 50 miles per hour with his headlights on bright, when he saw the southbound Cox automobile, in its proper lane, approximately 500 yards distant, with its lights on bright. He immediately dimmed his lights; when the vehicles were approximately 450 yards apart he flashed his lights up to bright, flashed them on bright and dim several more times, and when the vehicles were 1,000 feet apart he flashed them on dim. At this point, the Cox vehicle dimmed its lights and when on dim, only one headlight was lighted. When the vehicles were approximately 400 to 500 feet apart, the Cox automobile went off the road. The automobile returned to the pavement and went off the road a second time. Humphreys could not state the distance between the two vehicles at that time. He immediately grabbed the trailer brake, the Cox automobile came back onto the pavement into the truck's lane of travel and collided with the right front wheel of the tractor. After the impact the truck jackknifed, Humphreys lost control, the truck went across the highway and turned over on its side on the west side of the road. Humphreys got out of the cab, and almost immediately thereafter the tractor caught fire.

The cattle trailer was a "double-decker," with gates which divided each deck into three sections. The gates were secured by chains, and in order to release the cattle it was necessary to open the doors of the trailer, and open the gates from the inside. After the collision the doors at the rear of the trailer were in place, and closed.

Humphreys had suffered a cut on the head, and after about 5 minutes, left the scene to go to the hospital. Several people had gathered at the scene, he told several bystanders that the cattle were not to be released regardless of what happened, and rather than release them, they were to be permitted to burn to death.

Cox testified that he was driving south on Route 159 at a speed of 50 to 55 miles per hour. He saw the truck for the first time when the vehicles were 200 to 300 feet apart, and at that time did not notice anything in particular with reference to the truck's headlights. The truck's lights were on bright. Cox flashed his headlights for the truck, the truck's lights blinded Cox, and he ran off on the right-hand shoulder. At no time before the collision did he apply his brakes. He stated that the collision occurred in his lane of travel. The record shows that he was cross-examined extensively with respect to discrepancies between his testimony at the trial and his discovery deposition.

David Neff, driving an automobile south on 159, had followed the Cox car for approximately two miles before the collision. He saw the Cox automobile swerve off the road, and thought it did so twice. He saw the truck's headlights and did not think they were blinding. He did not see the truck on Cox's side of the road at any time before it jackknifed.

The collision between the Moore truck and the Cox automobile occurred on Route 159, approximately one-quarter mile north of its intersection with Route 156.

James B. Odle, an Illinois State Trooper, was called to the scene and arrived there at approximately 1:15 a. m. The tractor had been on fire, and he learned that the fire had been extinguished by members of the Hecker Volunteer Fire Department. Neither Cox nor Humphreys were at the scene when he arrived. Odle had seen a number of white-faced cattle approximately one-quarter mile

11

north of the scene, and saw several more on the west side of the road near the overturned trailer. There were two or three cattle still in the trailer.

Bryan Rausch, a passenger in Neff's car, testified that he and Neff stopped at the scene, gave Humphreys some handkerchiefs because his head was bleeding, and left the scene to obtain help. At that time the cattle were in the trailer, but when they returned from a truck stop a quarter mile distant, the cattle had been released.

Several people who were in the restaurant at the truck stop testified that they went to the scene of the collision, and saw no cattle running at large. Two of these witnesses stated the trailer doors were closed. There was some general conversation about releasing the cattle and someone, not identified, released them.

One of the volunteer firemen testified that when he arrived at the scene, the cattle had not been released. He and the other firemen attempted to extinguish the flames, but ran out of water. They returned to Hecker, and when he came back to the scene approximately 40 minutes later, the steers had been released.

Arthur Budde testified that he was one-quarter mile south of the scene when he heard a crash, and saw flames. When he arrived at the scene, Humphreys was at the rear of the trailer. He observed that the trailer doors were closed. He drove Humphreys to the hospital at Red Bud, and when they arrived there he asked Humphreys whether he should release the cattle. Humphreys replied "Not unless you want to take the responsibility for it—just leave them in there."

At approximately 1:40 a. m. on August 27, 1965, Sabo was driving his Renault automobile north on Route 159. Allen was riding in the front seat and Sabo's son, Michael, was riding in the back seat. Both Allen and Michael were asleep. He had been driving at approximately 65 miles per hour and as he approached the intersection of

Routes 159 and 156, he decelerated to approximately 50 to 55 miles per hour. He dimmed his lights for an oncoming car, and when he was approximately one-quarter mile south of the intersection of the highways, he saw a white-faced steer in his lane of travel. It was about 50 feet ahead of him when he first saw it. He applied his brakes, but collided with the steer. He was knocked unconscious, and learned later that after striking the steer, his car had collided with an oncoming automobile.

Verlyn Smith, an Illinois State Trooper, called to the scene, found a dead steer near the point where he found Sabo's car and the automobile with which it had collided.

Both defendants contend that the negligence which caused the collision cannot be held to be the proximate cause of plaintiffs' injuries. They argue that the act of the person or persons who opened the trailer doors and released the cattle was such an independent intervening act as to supersede defendants' negligence as the proximate cause of plaintiffs' injuries. They argue further that the force set in motion by defendants had spent itself, and could not have been the cause of the subsequent collision which occurred one-half mile away, and forty minutes later. They contend that the first incident was at an end, the cattle were not released from the trailer until approximately one-half hour after the collision, and except for the intervention of the person or persons who released them, the collision in which plaintiffs were injured could not have occurred. They also contend that they had no control over the person or persons who opened the doors of the trailer and released the cattle, and the collision, at most, created a condition, but was not the proximate cause of plaintiffs' injuries.

Counsel have cited and argued many authorities in support of their contentions with respect to proximate cause, independent intervening cause, and foreseeability. The statement of the governing rule presents no serious prob-

13

lem. In Neering v. Illinois Cent. R. Co., 383 Ill 366, at page 380, 50 NE2d 497, the Supreme Court said "What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. (Illinois Central Railroad Co. v. Oswald, 338 Ill 270; Hartnett v. Boston Store of Chicago, 265 Ill 331.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (Illinois Central Railroad Co. v. Oswald, 338 Ill 270; Pullman Palace Car Co. v. Laack, 143 Ill 242.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (Wintersteen v. National Cooperage and Woodenware Co., 361 Ill 95; Sycamore Preserve Works v. Chicago and Northwestern Railroad Co., 366 Ill 11.) What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence, Phillabaum v. Lake Erie and Western Railroad, 315 Ill 131.

"The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, efficient and intervening cause so that the negligence is not actionable is subject to the qualification that if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of the injury and he may be held liable notwithstanding the intervening cause. The intervening act of a

third person does not necessarily relieve the author of an earlier negligent or wrongful act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause. Garibaldi & Cuneo v. O'Connor, 210 Ill 284; Armour v. Golkowska, 202 Ill 144."

In Phillabaum v. Lake Erie & W. R. Co., 315 Ill 131, at page 135, 145 NE 806, the Supreme Court said: "What is the proximate cause of an injury is ordinarily a question of fact, to be determined by the jury from a consideration of all attending circumstances. (Citing cases.) It can only arise as a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them."

In Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, at page 510, 229 NE2d 504, the Supreme Court said: "We are not completely certain that the rule heretofore used in this State in determining when questions of negligence and contributory negligence become questions of law, i. e., only when all reasonable men would agree that due care had or had not been exercised, is the most workable in practical application. Our dissatisfaction stems from the fact that there is at least a surface incongruity in a trial judge saying all reasonable men agree that the proof established the presence or absence of due care when 12 jurors have just reached a contrary conclusion. And it seems even more incongruous for reviewing courts to so state when the trial judge and jury reached the opposite result, when the trial and reviewing courts disagree or the members of a reviewing court disagree among themselves that such is the case. . . . Rather, we believe the rule is best which in some form finds favor in other States heretofore indicated and which has, in part, been heretofore recognized in this State. In our

15

judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

It appears to us that in determining when the question of proximate cause is one of law, rather than fact, the rule of Phillabaum has been modified by Pedrick.

Despite the apparent simplicity of the rule as stated by the Supreme Court, its application to factual situations has presented complex and serious problems. Probably no other aspect of the law of torts has been the subject of so much discussion and comment. (See Harper and James, The Law of Torts, (1956) Chapter 20; 155 ALR 157; 100 ALR2d 944, and the texts, treatises and annotations cited.) We find ourselves in agreement with the courts whose statements are hereafter quoted.

In Anderson v. Jones, 66 Ill App2d 407, 213 NE2d 627, the Appellate Court reiterated the rule, then at page 411 said: "The almost universal acceptability of these principles has not deterred their application with varying and seemingly contradictory results. We will not be so temerarious as to attempt a reconciliation of the uncounted and countless cases. In the last analysis, each case is bottomed on its own set of facts, its factual twin is seldom if ever, available as an infallible guide and hence the facts of the particular case determine whether a question of fact or a question of law is presented."

Under similar circumstances, Mr. Justice Manning of the Supreme Court of New South Wales, in Overseas Tankship, Ltd. v. Morts Dock & Engineering Co., Ltd. (see 100 ALR2d 932), said "To say that the problems, doubts and difficulties which I have expressed above render it difficult for me to apply the decision In re Polemis with any degree of confidence to a particular set of facts would be a grave understatement. I can only express the hope that, if not in this case, then in some

16

other case in the near future, the subject will be pronounced upon by the House of Lords or the Privy Council in terms which, even if beyond my capacity fully to understand, will facilitate for those placed as I am, its everyday application to current problems."

There can be no question that the defendants, all of whom the jury found to be negligent, should reasonably have foreseen that the collision of their vehicles might cause injury to someone. It is true that their situations were somewhat different—Moore and Humphreys knew their cargo was cattle, while Cox, prior to the collision did not—and Cox argues that while the rule of foreseeability might possibly apply to the other defendants, it is not applicable to him.

In our opinion, the test is not quite so subjective or narrow as Cox contends. That a vehicle with which his automobile collided might be loaded with livestock is not so bizarre a situation as to remove it from the scope of what is reasonably foreseeable. It is reasonably foreseeable that, in the event of damage to the vehicle, the livestock might in some manner be released. The burning of one or more vehicles involved in a collision is not so infrequent or unusual as to be unforeseeable. We conclude, therefore, that it was a question of fact for the jury as to whether the defendants ought to have foreseen that the cattle would be released as the result of the collision, and being so released, might cause injury to others. That they might not have foreseen the precise manner in which the release of the cattle was effected is not significant, and it was reasonably foreseeable that they might be released by the action of a person or persons who sought to rescue them from the burning vehicle.

We have considered defendants' contention that the force set in motion by their negligence had spent itself, and the collision, at most, created a condition but was not the proximate cause of plaintiffs' injuries. We see nothing to be gained by a discussion of the cases upon

17

which these arguments are based other than to state that the factual situations are so dissimilar that we do not find them controlling as precedents. In our opinion, the trial court correctly held the issue to be one of fact and did not err in submitting it to the jury.

Moore and Humphreys contend that all of the evidence when viewed in its aspect most favorable to plaintiffs, so overwhelmingly favors these defendants, that no verdict against them could ever stand. They argue that the only evidence of any negligence on their part is the testimony of Cox, that he was so thoroughly impeached by his prior testimony under oath as to be unworthy of belief, and under Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, the judgment against them must be reversed. Alternatively, they argue that the verdict against them is against the manifest weight of the evidence, and if the judgment is not reversed outright, a new trial must be granted.

■ It is true that the testimony of Cox with respect to what occurred immediately prior to and at the time of the collision was impeached in many particulars, and much of it is contrary to his discovery deposition. However, in Guthrie v. Van Hyfte, 36 Ill2d 252, at page 258, 222 NE2d 492, the Supreme Court said, "The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not per se destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies. (Citing cases.) Defendant argues that the contradictory statements here were those of plaintiff, himself, and cites numerous law review articles, textwriters and decisions to the effect that such statements constitute substantive evidence against him of the facts stated. Such is, of course, the rule, and proof of such statements was here admitted. It then became the duty of the trier of fact—the jury—to evaluate the sworn testimony, the prior inconsistent statements

and the explanations thereof, giving to the various witnesses such credence as the jurors determined proper. (Citing cases.)"

In Brayfield v. Johnson, 62 Ill App2d 59, 210 NE2d 28, at page 63, this court said: "A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. Romines v. Illinois Motor Freight, Inc., 21 Ill App 2d 380, 158 NE2d 97 (1959). It is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident. Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119 (1957). Manifest means clearly evident, clear, plain, indisputable. Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705 (1947)."

Upon reviewing the record in the light of the relevant authorities, we hold that the trial court properly refused to direct a verdict for these defendants, and the verdict is not against the manifest weight of the evidence.

Moore and Humphreys contend that statements made in the closing argument by plaintiff's counsel constitute a judicial admission that they were not liable. Plaintiff's counsel stated that he was particularly impressed with Humphreys' truthfulness, but Cox had consistently lied; that he could not, in good conscience, state that he felt that Humphreys was at fault, or that the truck, prior to the collision, had been on the wrong side of the road.

Unless the statements of counsel constitute judicial admissions, they would not serve to relieve defendants of liability. In Rosbottom v. Hensley, 61 Ill App 2d 198, at page 215, 209 NE2d 655, the Appellate Court

19

said: "Judicial admissions must be distinguished from evidential admissions in that the former are binding and are considered to be incontrovertible. They include pleadings in the case, admissions in open court, stipulations, and admissions made pursuant to requests to admit. Cleary Handbook of Illinois Evidence, 1963, secs 5.1 and 17.12. In the dictionary denotation, a judicial admission is a formal act of the party or his attorney in court, dispensing with proof of a fact claimed to be true and is used as a substitute for legal evidence at the trial. Blacks Law Dictionary, 1944." In our opinion the statements made by counsel were not judicial admissions and do not exculpate the defendants. We have examined the authorities cited by defendants (Nowak v. Schrimpf, 44 Ill App2d 309, 313, 194 NE2d 547 (1963); People v. Hilltop M. M. Co., 300 Ill 564, 571, 133 NE 303 (1921); Deffler v. Loudenback, 233 Ill App 240 (1924); Kirchheimer v. Barrett, 125 Ill App 56 (1906); and Parker v. Louisville & N. R. Co., 230 Ill App 259 (1923)) and find them so clearly distinguishable as to require no further discussion.

Moore and Humphreys contend that certain remarks of counsel for Cox, made during final argument, were so prejudicial as to deprive them of a fair trial.

The record shows that counsel for Moore and Humphreys argued before counsel for Cox. During Cox's argument two objections were made, one by plaintiffs' counsel and one by counsel for Moore and Humphreys. Both objections were overruled by the trial court. In final argument, plaintiffs' counsel answered those portions of Cox's argument to which objections had been made.

Nothing is to be gained by quoting here the statements of which Moore and Humphreys complain, and it suffices to say that they might be categorized as attacks on opposing counsel. That an occurrence of this type is not without precedent is evidenced by the length of the annotation found at 96 ALR2d 9.

Each of the arguments in this case contains statements which should not have been made. In considering a similar situation, this court, in Wells v. Gulf, M. & O. R. Co., 82 Ill App2d 30, 226 NE2d 662, said at page 34: "The rule governing review of assignments of error based upon alleged improper argument to the jury is clearly stated in Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249. The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed his duty and properly exercised the discretion vested in him. North Chicago St. R. Co. v. Cotton, 140 Ill 486, 29 NE 899. The attitude and demeanor of counsel and the general atmosphere of the trial are observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld. City of Chicago v. Chicago Title & Trust Co., 331 Ill 322, 163 NE 17."

In reviewing the arguments of counsel in the light of the above quoted rule, we cannot say that in refusing to grant Moore and Humphreys a new trial, the trial court abused its discretion.

For the reasons set forth, the judgments of the Circuit Court of St. Clair County are affirmed.

Judgments affirmed.

MORAN and EBERSPACHER, JJ., concur.